Mr Justice -Washington
 

 delivered the opinion of' the jJourt.
 

 This was an information filed' in the .district court of Indiana, by the United States, against sundry goods and merchandise,. seized as forfeited under.the provisions, of two acts of cohgress, bearing date the ,30th Of March. 1802, cb. .273, and the 6th of May 1822, ch. 58, fot regulating trade and intercourse with the Indian tribes.
 

 The information sets forth, in substance, that on the 24th of September 1824, William H. Wallace, a citizen of the United States, and having.a license to trade with Indian tribes within the territory of the United States, did,take.and carry into the Indian country lying on the north or west side of the -Tippecanoe river, for the purpose of trading with the tribes of Indians, certain goods, which are particularly described, amongst which.were seven kegs of whiskey and one teg of shrub,, for the purpose of vending or distributing the same among the Indian tribes contrary.to the statute, &e.
 
 *363
 
 That upon suspicion that ardent spirits had been carried by the said Wallace into the said Indian country, for the purpose aforesaid, the said goods, &c. were searched by order of an Indian agent, duly appointed to, and qualified for that office
 
 y.
 
 upon which search the said kegs of whiskey and shrub, were found so carried, for the purpose aforesaid; and were, together with-the said'goods, &c. seized by the said Indian agent. The information concludes with a prayer, that the goods sb seized may be declared to be forfeited, and -to be disposed of according to law.
 

 To this information, Wallace, as attorney in fact for the American Fur Company, interposed a claim ,and answer, which, after protesting against the sufficiency of the information, denies, by w;ay of plea, that he did, among the' goods, &c. in the information mentioned, carry into the. Indian country, lying on the north or west of the Tippecanoe, river, seven kegs of whiskey and one of shrub, for the purpose of trading,'- or distributing the same, among the Indian tribes, as in the information mentioned.
 

 The issue was tried by a jury, who’ found a verdict in favour of the United States.
 

 . Upon the trial of the cause, three bills of exceptions, to the following effect, were taken.
 

 . The first is to the opinion of the court,, which permitted the district attorney to give in. evidence the conduct and-declarations of John Davis, so far. as he acted as the agent of Wallace, or in conjunction with him, in relation to the charge laid in the information, with a view to prove the purpose of the said Wallace.
 

 The second bill states that, upon the motion„of the district attorney, the court instructed the jury, that if they should believe, from the evidence, that Wallace, as an Indian trader, did carry ardent spirits into the Indian country, and that, the same were found therein, among any part of his goods, it is prima facie.evidence of his having violated the acts of congress, on which this prosecution is founded, so as to throw the burden of proof upon the defendant.
 

 The. defendant.then moved the court to instruct the jury, that,, unless they should be of opinion, upon the evidence,
 
 *364
 
 that the ardent spirits mentioned, in the information were mingled with the bales of merchandize at the time of seizure, and carried into the Indian territory, in violation of the act of 1802, and, whilst the said,spirits and goods were remáin-ihfir in the Indian territory, were seized by the officers of government, their verdict should be for the defendant. This instruction the court refused to give; and directed the jury, that if they should be of opinion, from the evidence, that the defendant, as an Indian trader, did carry ardent spirits into the Indian country, which were found with a part of his goods therein, with'the purpose of being vended or distributed amongst Indian tribes; all the goods of the said trader, designed for sale under his license, and seized in the. Indian country, whether all or only a part of them were found with the spirits,,are forfeited; and that the seizure thereof in. a territory, purchased by the United States of the Indians, but frequented and inhabited exclusively by Indian tribes, is legal. This refusal, and instruction, form the subjects of the third bill of exceptions.
 

 The objection to the evidence of Davis is so fully answered and repelled by this Court in the case, of the United States
 
 vs.
 
 Gooding, 12
 
 Wheat.
 
 468, that it seems, necessary only to refer to that decision. That was a criminal prosecution against the owner of a vessel,, under the slave trade act of congress; and an objection was taken by his counsel to evidence of the acts and declarations of the master of the vessel, who was proved to have been, appointed to that office by the defendant, with an authority to make the fitments for the vessel.
 

 The principle asserted in the decision of 'that point, and applied to the case was, that whatever an agent does, or says, in reference to the business in which he is at the time employed, and within the scope of his authority, is done or said by the, principal; and may -be. proved, as well in a criminal as a civil case; in like manner as if the evidence .applied personally to the principal.
 

 The opinion of the court in the present case is not-less correct, whether Davis was considered by the jury as having apted
 
 in conjunction
 
 with. Wallace, or strictly as his. agent.
 
 *365
 
 For we bold the law to be, that where two or more persons aré associated together for the same illegal purpose, any act or declaration of one of the' parties, in reference to the common object, and forming apart of the rés gesta, may be given in evidence against the others; and this we understand, upon a fair interpretation of the opinion before us, to be the principle which was communicated to the jury.
 

 The instruction to.which the second exception was taken, having been passed over without.objection by the counsel for the plaintiff in error, it becomes unnecessary for. the Court to notice it otherwise than to say that it meets our entire approbation.
 

 In order clearly to comprehend the subjects embraced by the, third, bill of exceptions, it will be proper to examine with attention a few of the sections of the acts on which this prosecution is founded.
 

 The first commences-in the 1st section, by declaring that a certain boundary line, therein described in general terms, as established by treaty between the United States and various Indian tribes, shall be clearly ascertained, and distinctly marked in such places as the President of the United States should deem necessary, and in the manner he should direct; with a proviso, that if the boundary line between the said Indian tribes and the United States should at any time thereafter-be varied, by any treaty which should be made between the said Indian tribes and the United States,.then all the provisions contained in that act should be construed to apply to1 the said line, so to be varied in the sanie manner as the said provisions apply, by force of that act, to the boundary line therein before recited.
 

 The act then proceeds to prohibit citizens of, or residents within the United States, from crossing over the said boundary line to hunt, &c. and inflicts punishments of various degrees upon persons who should be- convicted of certain other acts of aggression, within the .Indian country. By the 16th section, it is made lawful for the mjlitary force of the United States to apprehend every person who may be found in the Indian country,
 
 over and beyond
 
 the said boundary line, between.the Uitited States and the Indian tribes, in vio
 
 *366
 
 lation of any of the provisions of this act; and to convéy them to the civil authority of the United States, in some one of the three adjoining states or districts, to be proceeded against in due course of. law. We then come to the 21st section of this act, to which' the act of.the 6th of May 1822 is an amendment; which authorises the President , of the United States to take such measures, from time to time, as to. -him might appear expedient; to' prevent or restrain the vending or distributing,of spirituous liquors among all or any of the Indian tribes;
 

 The 2d section of the f atter act, in execution of the power vested in the President of the United. States by the preceding 21st section, authorises him to direct Indian agents, governors of territories, acting assuperintendants of Indian affairs, and-military officers; to cause the stores and. packages of goods of all traders to be searched, upon suspicion or information that ardent spirits are carried into the Indian countries-by the said traders,-in violation of the aforesaid 21st section; and declares, that if any ardent spirits should be so found, all the goods of the particular-trader should be forfeited, one half to the use of the informer, the other to. the use of the government; and that .his license should be can-celled, and his bond put in suit.
 

 The difference between the instruction asked for by the defendant’s counsel, which the court refused to give, and that which was given in the first part of this exception, consists in this; that the former
 
 would seem
 
 to insist, (for this branch of the exception is very ambiguously expressed, and is oh that ground objectionable), that to produce a . forfeiture of the trader’s goods, the ardent spirits must be found mingled with the bales of goods at the time of seizure in the Indian country ; and that no part of the goods but that with which the spirits were found so mingled, were liable to seizure.
 

 It is very apparent from the manner in which the instruction which was given is expressed, that that asked for by the defendant’s counsel was understood by the court belowas we have interpreted it.
 

 But the instruction which was given asserts the law to be, that if the ardent spirits were found
 
 with a part only
 
 of the
 
 *367
 
 goods carried into the Indian country, for the illegal purpose stated in the informatión ;
 
 all the goods
 
 of such trader designed for sale under his iicense, and seized in the Indian country, were liable to forfeiture.
 

 This construction of the acts of congress which have been referred-to, is, in the judgment of this Court, well warranted by the words, of those acts; as well as by the obvious policy which dictated them. The expressions “ all the goods of the said traders” in the 2d section of, the last act, although general enough, if they stood alone, unexplained by the context, to embrace all the goods belonging to the trader wherever tlie^ might be found $ are clearly restrained by the provision which immediately precedes them, so as to mean those goods only which might be found in company; though not in contact with the interdicted article.
 

 The notion that, those goods alone are liable to seizure -and forfeiture, amongst which the ardent spirits are found iningled, can receive no countenance from any fair construction of this section. That which is contended, for would enable the trader, by the most simple coiitrivance, to protect the whole of his other goods from, forfeiture. To effect this, he would only have to keep the spirits separate from his other goods during their transportation, tó, and after their arrival in the Indian country, so as not to contaminafe'those goods by placing them in immediate contact with the offending article. A construction which would sanction so glaring, an evasion of the whole policy of the. law, ought in no case to be adopted, unless the natural meaning of the words of the act require it. Even penal laws, which, it is. said, should be strictly constrüed, ought not to be construed so strictly as to defeat the obvious intention of the legislature. This was, laid down as a rule by this Court, In the case of the United States
 
 vs.
 
 Wiltberger, 5
 
 Wheat.
 
 56.
 

 We are, therefore, of opinion, that the instruction asked for. by the defendant’s counsel was properly refused, and that ■ that which was given,'so far as it has been examined, is unexceptionable.
 

 The latter part of this instruction remains now to be considered. After stating to the jury, that if they should be of
 
 *368
 
 opinion, that the defendant, as an Indian trader, did carry ardent spirits' into the Indian country, which were found with a part of his goods therein, with the purpose of being vended or distributed.amongst Indian tribes; all’the goods of the said trader designed for sale under his license,
 
 and seized in the Indian country,
 
 were forfeited; the instruction proceeds as follows; “and that the seizure thereof,in a territory .purchased by the United States of the Indians, but frequented and inhabited exclusively by Indian tribes, is legal.”
 

 We have found no little difficulty in. understanding the real, meaning of the court, from the language in which^this latter proposition is expressed ; whether it was intended to state, that after the goods with the ardent spirits had been carried into the Indian country with the unlawful purpose, they might be seized in a country purchased of the Indians by the United States, under the circumstances referred to; or that being carried into this latter district of country,' and there seized, such seizure, would be legal.
 

 We rather incline to the opinion that the latter, interpretation was the one intended by the court, and that that part of the sentence was merely added as explanatory of the terms
 
 Indian country,
 
 which had previously been used. For if it was merely meant to affirm,- that, after the forfeiture had attached in the Indian country, the goods might.be seized any where out of that country ; no reason is perceived why the place of seizure should be confined to a territory purchased by the United States of the Indians, and inhabited exclusively by them, rather than to a territory not so purchased and inhabited. Besides, the proposition asserted in the preceding part of the instruction, being, that ardent spirits cárried into the Indian country, with the unlawful purpose, and found with a part of the trader’s goods, and
 
 seized in the Indian country,
 
 subjected all his goods'found with spirits to forfeiture; it would seem something like a contradiction, to lay it down as a distinct proposition, that the seizure spoken of might be made out of the Indian territory. As explanatory of the expressions before noticed, it was entirely appropriate.
 

 
 *369
 
 If we have rightly interpreted this part of the.instructten , we feel: ño hesitation in saying, that we cannot accede to the correctness of 'the instruction thus qualified ; since it would subject to seizure and forfeiture, all the goods of the trader Carried into a country, not only belonging to.the United States, but lying without .the boundaries of the In-dián country,'as they are described by the 1st section of the act.of 1802; to which'all the. provisions contained in that act, and' consequently, those contained in the émendatory act of 1822,- are by that section éxpressly confined. If the cóüntry referred to in this instruction was purchased of the Indians subsequent to
 
 the
 
 30th
 
 of
 
 March 1802, so as that the boundary line thereby became varied; then the above section declares that all the provisions of that act, shall be construed, to apply .to the boundary line so to be varied, in the same manner as they apply by force of that act ijo the boundary line therein recited.
 

 ■ If we misunderstand the meaning of this instruction, it is so probable that it might, have been misunderstood by the jury, that justice demands a re-trial of the cause,.
 

 The judgment of the court below is to be reversed, and the cause rémarided to that court, with instruction to award a veniré de novo.
 

 This cause came on to be heard on a-transcript of the record from the district court of the United Staies for the district of Indiana, and was argued by counsel; on consideration whereof, it is considered, ordered, and adjudged by this Court, that the judgment of the said- district court in this cause be, arid the same is hereby reversed and annulled, ahd tnat the cause be, and. the sáme is hereby remanded to the said district court, with directions to award a venire facias de novo. .