Bowen, J.
The 14th section of the “act relating to jurors,” statute 489, provides that a petit juror may be challenged for “ any cause that may render him, at the time, an unsuitable juror, and the validity of such challenge shall be determined by the court.”
Some of the causes which disqualify a juror from serving are pointed out in the statute; as where he has been an arbitrator of the same controversy, or has an interest in the cause, or has an action depending between him and the party, or has formerly been a juror in the same cause, or where he is the party’s master, servant, ^counselor, steward, or attorney, or is subpenaed in the cause as a witness, or where he is akin to either party. Proof of the existence of any one of these causes will exclude a person from serving as a juror. But it was not deemed safe to stop with this enumeration of causes, and therefore authority is given to challenge for any cause touching his competency, and the court must decide upon the validity of the objection which is raised, and if an incompetent juror be permitted to serve, after he is challenged, the question can be reviewed on error, and the verdict be set aside.
Any previously formed opinion upon the question to be tried, or any partiality or prejudice'against a party whose interests are involved, which will be likely to lead to conclusions unfavorable to him, in the determination of the issue, are causes which will warrant the challenging of a juror, and require his exclusion from the panel, as being unsuitable to serve. The jury should enter upon the trial with minds open to those impressions which the testimony and the law of the case ought to make, not with those preconceived opinions which will resist those impressions. United States v. Burr, 1 Term, 415. How was it with the juror, Hickman Bullock? He had formed an opinion as to the commission of the murder, and as to the guilt or innocence of the prisoner. But he had confidence *430 •in his ability, notwithstanding, to hold the scales of justice even— to hear dispassionately, and to decide impartially and justly the prisoner’s case. His opinions, though to this dangerous extent, already formed, he did not think would influence his verdict in the •case, and he was prepared and willing to make the experiment of attempting to resist such preconceived opinions and bias of mind, if ho should be directed to serve. It was said by Judge Marshall, on the trial of Aaron Burr, that if the opinion formed, be on a point •so essential as to go far toward a decision of the whole case, and to have a real influence on the verdict to be rendered, the distinction 'between a person who has formed such an opinion, and one who ■has, in his mind, decided the whole case, appears too slight to furnish the court with solid ground for distinguishing between them. Bullock’s condition of mind was not adapted to a disinterested and impartial canvassing *of the testimony. As an upright man, he might struggle to promote the finding of a just ■verdict, but however firm his principles and moral strength of purpose mighü be, there was still danger to be apprehended in his capacity to go through the case, uninfluenced by the notions which he had already conceived. The prisoner was not compelled to bravo the consequences of submitting to the determination of a trier who might, perchance, be swayed by opinions which he had made up before hearing the evidence. ¥e think the juror ought to •have been set aside for incompetency.
2. Did the court err in permitting the declaration of Jonas Fouts, •made in the absence of the prisoner on trial, to be given in evidence to the jury ?
Where several persons conspire to do an unlawful act, and the •connection and purpose be first made out, to the satisfaction of the •court, the acts and declarations of one, who afterward engaged in the prosecution of the criminal design, and in furtherance of it, may be received against a co-conspirator, in the same transaction. A common case, given in the books, is of rioters. 10 Pick. 497. But the rule extends equally to all cases where a combination, among several individuals, to commit a wrong, is once established. Each then becomes responsible for the declarations as well as the acts of the others, which maybe spoken or done in furtherance of the .common purposes. Waterbury v. Sturdevant, 18 Wend. 360; U. S. v. Gooding, 12 Wheat. 468; Am. Fur Co. v. United States, 2 Pet. 363.
*431 Previous to the introduction of any of the declarations of Jonas Fouts, there was evidence, proper for the consideration of the jury, tending to show that an arrangement had been perfected between the two Fouts, to murder Scott. What either of them did afterward, toward the consummation of the object which they had thus mutually agreed to effect, was competent evidence against both or against either.
The declarations made by Jonas Fouts to Moses Geddis, do not, however, fall within this rule. He related what he himself intended to do. He disclosed a design, merely, entertained by *himself. He connected no one in it, nor did he indicate, by his remarks, any intention to further or carry into effect any combination against the life of Scott. He made no such allusion, but simply imparted the secrets of his own bosom, and the determinations of his own mind. Philip Fouts can not be held responsible for such declarations, made on the sole responsibility of his brother, and not in furtherance of any common and joint plan of theirs. The court of common pleas, therefore, we think, erred in admitting this testimony.
It is different, however, in regard to the declarations made by Jonas Fouts to Amos M. Scott. These related to the common design, and were in furtherance of it. They tended to show that both he and Philip had, the night before, been searching for the deceased; that the plan was, for both of them to undertake to accompany him, after night, to Rousseau, with the view of thus securing an opportunity of perpetrating the crime which they contemplated committing. It was a disclosure, on the part of Jonas, of the common object and plan which had been devised by him and Philip, and of acts done and to be done in pursuance thereof. In other words, the conversation itself was, in fact, an instrumentality, a means employed to bring about an opportunity for carrying into effect their previously formed criminal purpose. In this light, the testimony, as to the declarations of Jonas, was rather evidence of acts — verbal acts — and part of the res gesta, than mere declarations in the ordinary sense.
The principle on which the acts and declarations of other conspirators are admitted in evidence against the person prosecuted, is, that by the act of conspiring together the conspirators have jointly assumed to themselves, as a body, the attribute of individuality, so far as regards the prosecution of the common design; thus render *432 ing whatever is done or said'by any one, in furtherance of that design, a part of the res gesta, and therefore the act of all. 3 Greenl. Ev., see. 94. For this reason the evidence of the declarations made to Amos M. Scott by Jonas Fouts, was clearly admissible as against Philip Fouts, and the court did not err in overruling the defendant’s exceptions to it.
*The judgment of the common pleas is reversed, and cause remanded for further proceedings.
Bartley, C. J., and Swan, Brinkerhoef, and Scott, JJ., concurred.