CHARLES A. STROUT, by S. C. STROUT, guardian and next friend,

*vs.*

SAMUEL E. PACKARD and others.

Cumberland. Opinion May 15, 1884.

*Evidence. Joint assault. Hazing.*

In an action against several individuals for a joint assault, evidence of misconduct on the part of some of the defendants before and after the assault, tending to show a combination among them, should be limited in its application to those defendants against whom such acts of prior or subsequent misconduct are proved. It is not evidence against the other defendants.

ON EXCEPTIONS and motion to set aside the verdict.

(Declaration.)

"In a plea of trespass, for that said defendants, at Brunswick, in said county of Cumberland, on the twenty-fifth day of October, A. D. eighteen hundred and eighty-one, with force and arms, assaulted the said Charles A. Strout, and then and there, beat, bruised, wounded and ill-treated him, and then and there struck him, said Charles, a violent and dangerous blow, upon the

left eye, with a dangerous weapon, to wit, a piece of coal, of the weight of, to wit, one pound, thereby inflicting serious bruises and contusions of the head and face, and a dangerous and painful injury to the left eye of said Charles, wholly destroying the sight of the same for a long time, to wit, two weeks, and endangering the sight therefrom, permanently, from which injury he has suffered, and is still suffering, and will continue to suffer great pain, and has been put, and will continue to be put, to great expense for medical attendance and nursing; and other enormity to the said Charles, the defendants then and there did, against our peace; also for the said defendants, at Brunswick, in said county of Cumberland, on the twenty-fifth day of October, last past, wantonly, wickedly and unlawfully conspired, confederated and agreed together, to attack, assault, insult and otherwise injure in their person, and deprive of their property, certain members of the Freshman class of Bowdoin college, in said Brunswick, one of said members being the said Charles A. Strout, who was then and there in the lawful and peaceable occupation of his own room, in Appleton Hall, so called, belonging to said college, and being so confederated together, said defendants, in the execution of their said purpose and agreement, then and there with force and arms, unlawfully made an assault, upon said Charles A. Strout, then and there being in his room as aforesaid; and him the said Charles did beat, bruise and grievously wound, and throw dangerous missiles through the windows of the room of said Charles, and at his head, one of them, to wit, a large piece of hard coal, of the weight of, to wit, one pound, so thrown by defendants at said Charles, and through his said window, struck said Charles on and over the left eye of said Charles, inflicting a dangerous wound and blinding the sight of the left eye of said Charles for a long time, to wit, two weeks, from which injury the said Charles was and is in great danger of losing the sight of said eye, and has ever since suffered great pain and prostration, and will continue to suffer great pain, and mental distress, and has been and will be put, to great expense of medical attendance, medicines and nursing. To the damage," &c.

Writ is dated November 15, 1881. The plea was the general issue. The verdict was against all the defendants in the sum of twenty-five hundred dollars.

The facts are sufficiently stated in the opinion.

*A. A. Strout, N. and H. B. Cleaves,* and *Strout, Gage and Strout,* for the plaintiff, upon the question discussed in the opinion, contended that it is not necessary that the judge should use the language of the request; he may use his own language and embody several requests in one instruction. *State* v. *Reed,* 62 Maine, 129.

It is sufficient if the substance of the requested instruction is given. *Foye* v. *Southard,* 64 Maine, 389; *State* v. *Watson,* 63 Maine, 128; *Roberts* v. *Plaisted,* 63 Maine, 335.

The instructions were not limited to the mere fact that the evidence could not be used to show the assault or a motive for it; but the jury were told that it was not admitted, and was not to be used to "prejudice the defendants by showing that they had been engaged in other wrongful proceedings," nor to prove the likelihood they would do such an act, nor to raise a probability against the defendants, but that it was admitted simply to establish, so far as it might in their minds tend to establish, what the common design of the defendants was upon that night, and only so far as it tended, in their judgment, to develop the nature of the common object, in pursuance of which the defendants were out upon this occasion; but, "that in determining whether any one of the defendants threw the coal, they will lay out of the case any evidence with regard to their conduct on previous or subsequent occasions, and that it is not to be considered by the jury, unless they first find that one of the defendants threw the coal which injured the plaintiff, and then only as bearing upon the question whether the other defendants were aiders or abettors in that act." The latter being in the exact language of a request of defendants, and all being much more favorable to defendants, and so not subject to exceptions. *Staples* v. *Wellington,* 58 Maine, 453; *Gardner* v. *Gooch,* 48 Maine, 487; *Merrill* v. *Merrill,* 67 Maine, 70.

The defendants were assembled together on the night of plaintiff's injury from some motive and with some object, and for what was certainly a proper subject of inquiry by the jury, and any evidence legally tending to show it was proper for their consideration. It is well settled that evidence may be received of facts which happened before or after the principal transaction when the knowledge or intent is a material fact. 1 Greenl. Evidence, § 53.

A similar rule has been applied in cases of fraudulent transfer of property, when evidence of other fraudulent conveyance made about the same time was received. *Stockwell* v. *Silloway*, 113 Mass. 384; *Warren* v. *Williams*, 52 Maine, 346; *Howe* v. *Reed*, 12 Maine, 515.

So in cases of false pretences, evidence of similar false pretences made to others about the same time is received. *McKenney* v. *Dingley*, 4 Maine, 172; *Hawes* v. *Dingley*, 17 Maine, 341.

So upon indictment for larceny, evidence that respondent, after the larceny, was in possession of other bills, though not identified, was admitted. *Commonwealth* v. *Montgomery*, 11 Met. 535.

So in an action for money claimed to have been appropriated by defendant, evidence was admitted that while in employ of plaintiffs he was the owner of property far exceeding his salary and receipts. *Railroad* v. *Dana*, 1 Gray, 101.

So in an action against a railroad company to recover for the destruction of buildings by fire, claimed to have been communicated by defendant's locomotives, evidence was admitted that during the same summer, *some* of defendant's locomotives scattered fire, and without showing that the one which plaintiffs claimed communicated the fire was among the number, or that they were similar in make, state of repair or management. *G. T. R. Co.* v. *Richardson*, 1 Otto, 470.

So in indictment against one for procuring a miscarriage, after proof of a common illegal purpose between defendant and other parties, their acts and declarations in his absence, in pursuance of the common purpose, are admissible against him. *Commonwealth* v. *Brown*, 14 Gray, 419.

To prove a conspiracy to commit a particular fraud, a like

fraud committed by the alleged conspirators about the same time on a third party, is held admissible in evidence. Hilliard on Torts, Vol. 2, page 309.

And it is not necessary that the conspiracy should first be established, the order of time as to the admission of evidence resting wholly with the judge. If the jury, from the legal evidence, are satisfied that this was a conspiracy, or common illegal purpose, then such evidence as just mentioned is competent. *Place* v. *Minster*, 65 N. Y. 89. As to the admission and use of testimony of this character, see also, *Butler* v. *Watkins*, 13 Wall. 464; *Commonwealth* v. *McCarthy*, 119 Mass. 354; *Commonwealth* v. *Merriam*, 14 Pick. 519; *Commonwealth* v. *Tuckerman*, 10 Gray, 197; *Commonwealth* v. *Choate*, 105 Mass. 451; *Commonwealth* v. *Bradford*, 126 Mass. 42.

Evidence of these acts was not admissible generally, but for a particular purpose; and the court, in their instruction properly limited the effect of the evidence to the purpose for which it was competent. All these authorities show that the instruction as to the use of this testimony was sound law, and much more favorable to the defendants than they had the right to have it.

*Charles F. Libby*, for the defendants, cited: *Parker* v. *Huntington*, 2 Gray, 127; *Randall* v. *Hazelton*, 12 Allen, 414; *Miller* v. *Shaw*, 4 Allen, 501; *Jordan* v. *Osgood*, 109 Mass. 457; *Com.* v. *Jackson*, 132 Mass. 16; *Vosburgh* v. *Moak*, 1 Cush. 453.

SYMONDS, J. This was an action against seven defendants, charging them with a joint assault upon the plaintiff, and claiming to recover damages therefor. The act of assault was the throwing of a piece of coal, which struck the plaintiff over the eye and injured him seriously. It was, of course, the act of one person. To show a concert of action on the part of the defendants, such as to affect them with a joint liability for this act of one, evidence was received of the misconduct of some of the defendants at other times, which the plaintiff claimed tended to prove a general design on their part, as upper classmen in Bowdoin

college, to harass the members of the Freshman class, of whom the plaintiff was one.

The court said to the jury : " Evidence was offered, which you will remember, as to the acts of some of these defendants in other cases, at other times. It is necessary that you should understand precisely what that evidence was offered for, and what use you can properly make of it. It was offered and admitted simply to establish, so far as it might in your minds tend to establish, what the common design of the defendants was upon that night. Evidence was offered to .show what some of the defendants, and the parties with whom they were out on other evenings shortly before, did at the rooms of other Freshmen. Now this evidence was admitted only, because, as to those of the defendants who did not actually throw the coal, the proper decision of the question may require evidence of the intention and purpose for which the seven defendants were out together that night, and what kind of acts and invasions of the Freshmen in their rooms were to be expected when parties were out upon such an expedition, and so to indicate what kind of a concert of action subsisted between the defendants on the night when the plaintiff was hurt."

The defendants seasonably requested the instruction, "that evidence of such (prior or subsequent) misconduct, on the part of any of these defendants, is not evidence against the other defendants not participating in the acts." This request was refused by the court and the limitation which it contained was not included in any of the instructions ·given to the jury in the charge.

The declaration alleged a joint assault. The averment of a conspiracy was of no account except that, under it, it might be proved in any legal way that the hand which threw the coal carried into execution the purpose of the seven. Evidence of prior or subsequent misconduct on the part of some of the defendants was only admissible for the purpose of proving, as among them, the existence and character of the combination or conspiracy ·alleged. The fact that a conspiracy exists, or the extent to which it goes, is not to be proved as against A, by the

declarations or the acts of B, with which no connection on the part of A is shown, and which do not appear to have been made or done in furtherance of a common design entertained by both. That a joint purpose of the seven was carried into effect by throwing the coal in this instance, was not to be proved by showing previous acts of combination and torts committed in pursuance thereof by three or four only. Precisely the limitation which the request contained was required in the legal statement of the case; that the testimony to misconduct on the part of some of the defendants before and after this assault, tending to show a combination among them, and offered and received only as "evidence of the intention and purpose for which the *seven* defendants were out together that night, and what kind of acts and invasions of the Freshmen in their rooms were to be expected when parties were out on such an expedition, and so to indicate what kind of a concert of action subsisted between the defendants on the night when the plaintiff was hurt," should have been limited in its application to those defendants against whom such acts of prior or subsequent misconduct were proved.

The evidence was offered only for the purpose of proving the presence and the scope of a joint intent in the single act, whether there was on this occasion a common purpose among the several defendants and whether it extended to the throwing of such a missile under such circumstances. The previous act of one was not evidence to prove this against another, who did not participate in that act. The mind of one is not to be revealed by the act of another, till some relation between the two is shown in the doing of that act.

In the introduction of evidence, the court was careful to limit the effect of the admissions, said to have been made, after the fact, to the president of the college by several of the defendants, so that they should be regarded by the jury in each instance as evidence only against those by whom the admissions were made. "The witness will recollect that the statements are evidence *only* against those who made the statements; *not* against others. He must be careful as to his recollection of the particular persons who made the statements." This was correct (*Comm. v.*

*Ingraham*, 7 Gray, 46), and we think it is as true of an earlier or later act of one of the defendants, when offered to show the existence of a combination or common intent, as it is of such an admission by one. That a joint purpose of the seven took effect in this single act of assault by one, could not be proved against all by showing acts of alleged combination among some of them at other times, not participated in by the others. Such an act, as against those not paticipating in it, did not tend to prove that they had any common purpose with the others whatever, either when the act was committed, or on the night of this assault.

The distinction is clear between the rule of evidence which applies here, and the rule which, when a conspiracy has once been proved *aliunde*, while it continues receives the declarations and acts of one conspirator, in furtherance of the common design, as evidence against even his absent associates. The jury were directed at the trial that the testimony under consideration was received for the purpose of proving what legally must be otherwise proved, before the evidence becomes admissible under this later rule, namely, the existence of the common design and its presence in a particular transaction. A conspiracy being proved among a certain number of men, the act of one in pursuance of the common plan, may be the act of all. But a man is not to be proved to be a conspirator, having a joint illegal intent with others in a particular assault which he does not personally commit, by showing the misconduct of the others on previous occasions in which he does not participate. How far the evidence of misconduct at other times, as disclosed in the report, may tend to show a combination on the part of any of the defendants to do such a wrong as that of which the plaintiff complains, need not here be considered; but there can be no doubt that such evidence, received to prove a common plan or purpose within the scope of which the committing of such an assault as this was included, must legally be confined to its effect to disclose the existence of such plan on the part of those against whom the acts are proved.

"Where two or more persons are associated for the same illegal purpose, any act or declaration of one of the parties in

reference to the common object, and forming a part of the *res gestœ*, may be given in evidence." *Am. Fur Co.* v. *United States*, 2 Pet. 365; *Nudd* v. *Burrows*, 91 U. S. 438. In the present case the question was whether the defendants were associated, for an illegal purpose, on the night of the injury to the plaintiff, and on that issue evidence of the misconduct of some of them at other times was received as generally admissible against all, while a request to limit the effect of it was refused. Each defendant had the right to claim that his joint liability for an assault should not be established, in whole or in part, by the acts of others, with which he was in no way connected. It is to be observed, as the court ruled at the trial, that "the gist of the action is not the conspiracy, but the damage done to the plaintiff by an act which is alleged to have been done by the defendants. The averment that the act done was in pursuance of the conspiracy, does not change the nature of the action. It is still an action of trespass for an assault and battery alleged to have been jointly committed by the defendants upon the person of the plaintiff; and it is to be tried and determined upon the principles applicable to actions of that description." The material inquiry, therefore, as to each one of the defendants, was, whether he shared in the commission of this particular assault, or not.

The existence of a conspiracy, as we understand it, is not in the first instance to be proved against one by the mere act or declaration of another, but, beyond that, if the existence of the conspiracy were fully proved as to some of the defendants, that fact had no tendency to decide adversely to the other defendants the vital question whether they took part in that conspiracy, and in such a way, to such an extent, as to make them joint trespassers in this transaction.

"The principle on which the acts and declarations of other conspirators, and acts done at different times, are admitted in evidence against the persons prosecuted, is, that, by the act of conspiring together, the conspirators have jointly assumed to themselves, as a body, the attribute of individuality, so far as regards the prosecution of the common design; thus rendering whatever is done or said by any one, in furtherance of that

design, a part of the *res gestæ*, and, therefore, the act of all. It is the same principle of identity with each other that governs in regard to the acts and admissions of agents, when offered in evidence against their principals, and of partners, as against the partnership." 3 Greenl. Ev. § 94.

"It is, of course, understood, that to entitle the declarations of a co-conspirator to admission, the conspiracy must first be proved *aliunde*. 2 Whart. Ev. § 1206.

Now, in the present instance, the evidence of misconduct by some of the defendants at other times, was not received to be connected with other evidence, showing that such misconduct at those times was in pursuance of a common plan in which all were involved — which plan extended to and included the commission of the principal tort — but was expressly received as in itself substantive evidence of the existence of the common plan among all the defendants; "to establish, so far as it might in your minds tend to establish, what the common design of the defendants was upon that night;" . . . as "evidence of the intention and purpose for which the *seven* defendants were out together that night, . . . . and so to indicate what kind of a concert of action subsisted between the defendants on the night when the plaintiff was hurt."

We can find no authority, and we can see no reason, for allowing the jury to regard the disconnected act of one of the defendants at another time and place as evidence pertinent to the issue, whether another defendant was guilty of a joint trespass on the night in question. This was the effect of the rulings given, accompanied with the refusal to give the instruction requested.

Notwithstanding the great learning of the charge given to the jury in this case, we think there was a defect in it in this respect which tended to the prejudice of the legal rights of the defendants, and may have been decisive of some of the important issues of the trial.

*Exceptions sustained.*

PETERS, C. J., WALTON, VIRGIN and LIBBEY, JJ., concurred.