Supreme Court—General Term—Fifth Department.

*April,* 1885.

## PEOPLE *v.* BASSFORD.

ACQUITTAL OF ONE OF SEVERAL ACCUSED.—EVIDENCE.

Where several persons are indicted together for the same offense, the acquittal of one is no bar to the conviction of another.*

---

* On an indictment for adultery the acquittal of one co-defendant is no bar to conviction of the other. Alonzo v. State, 15 *Tex. App.* 378; 49 *Am. Rep.* 207.

To show common interest and purpose of defendant and other persons indicted with him, it is competent to prove participation of defendant upon other occasions with these persons in the business in which the crime was committed.

Whenever common purpose or conspiracy by the defendants is shown, then acts and declarations of any one of them relating to the alleged offense, though in the absence of the others, is admissible, and the acts of one in the same common purpose become those of all.

It is competent to show that a defendant has sought to fabricate false evidence for the purposes of his defense.

APPEAL by William Bassford, defendant and appellant, from a judgment of the Court of Erie county, of October 30, 1884, Hon. W. W. HAMMOND, presiding, convicting defendant of forgery in the second degree, and from an order of said court denying defendant's motion for a new trial, and also from an order denying defendant's motion in arrest of judgment.

The defendant was indicted jointly with one Kennedy and one Potter for the alleged crime of forgery in the second degree, for forging and uttering a promissory note, and he was tried alone in the Court of Sessions of Erie county, found guilty by the verdict of the jury, and by the judgment of the court was sentenced to imprisonment for the term of five years.

The subject of the alleged forgery was an instrument purporting to be a promissory note of Philip Wigand, of October 25, 1883, payable to the order of A. Kennedy six months after its date. The evidence tended to prove that on that day the three indicted parties together went from the city of Buffalo with a wagon containing a farming mill to the farm and place of residence of Wigand, in West Seneca, Erie county, and there found him in the field at work, and requested him to become an agent to sell farming mills, and by their request he left the field and went with them to his barn. The defendant shortly left the barn and returned to the field, and Potter produced some papers, did some writing, and asked Wigand to sign. One of them was in effect an agreement by him to pay Kennedy one-half the profits of the mills sold, except traveling expenses, and $2 per day for work,

which by its terms Kennedy agreed to allow him. And the other purported to be a transfer to him of the interest of Kennedy in letters patent for improvement in farming mill, so far as related to the towns of Holland, Wales, Clarence and Marilla, in consideration of $200. Those papers were signed by Wigand and Kennedy. There was evidence that Wigand did not read them, nor were they read to him, and that he signed no note, and there was no talk about any note. And other testimony was given, tending to prove that his name subscribed to note in question was not his signature. Five days after this transaction, at the saloon of the defendant, in Buffalo, the latter called the attention of one Ebbs to the fact that he could buy a note made by Wigand for $200, at an advantage, telling him that it was perfectly good, that it was given for a threshing machine, and introduced him to Kennedy as the person having it, and Kennedy produced the note and offered to sell it at a discount to Ebbs, who expressed a desire to be satisfied that the name of Wigand signed to it was his signature, when Kennedy referred to the defendant as a person who knew " all about it," and the defendant said " Yes, I sat right by the old man when he signed his name." Thereupon Ebbs purchased the note for $176. And it seems that then Kennedy asked the defendant how much he owed the latter, and there was some talk of an account between them, and the defendant received some of the proceeds of the sale, ostensibly, and it may be in fact, on account of money due him from Kennedy. The defendant so testified. The purchaser immediately advised Wigand that he held his note. And shortly after proceedings were instituted against the persons afterward indicted. It appears that the defendant was out with Kennedy and Potter when they had another transaction in respect to the farming mill improvement patent with other parties, but there is no direct evidence that he was pecuniarily interested with them in the business. And the defendant testified that he was not present when the papers were signed, had nothing to do with the transaction, had no reason to suppose the note was forged, and that he helped to negotiate the sale of it to get payment of a debt Kennedy owed him.

*Swift, Hawkins & Gibbs* (*H. J. Swift*, of counsel), for defendant, appellant.

*E. W. Hatch*, district attorney (*George T. Quinby*, assistant), for the people, respondent.

BRADLEY, J.—The evidence was sufficient to justify the conclusion that the note was forged, and that it was the result of a common purpose of or conspiracy between the defendant, Kennedy and Potter, of which the sale of the note was the consummation. It does not appear for what purpose the defendant left the barn and returned to the field on the occasion of making the papers; whether it was to protect Kennedy and Potter against molestation, and permit them to have the uninterrupted care of Wigand in the transaction at the barn, may, under the circumstances, have been a question for the jury.

The defendant's motion for a new trial was on the ground, among others, that Potter had been tried upon the indictment and acquitted (which fact was admitted), and in support of that position it was suggested by the defendant's counsel that Potter was a principal and the defendant an accessory, and that the latter could not be convicted after acquittal and discharge of the former. The evidence was sufficient to authorize the jury to find the facts requisite to charge the defendant at common law as a principal in the second degree. For that purpose it was not necessary that he be actually present engaged in the act, but sufficient that he was constructively so, that he was "on guard," or in any manner acting in concert, or aiding and abetting. *Wharton Cr. Law*, (7th ed.) §§ 116, 124, 125, 126.

This distinction between principals in the first and second degrees was theoretical and not practical, and had no importance. *Id.* 129. And a party charged as principal in the second degree might be tried and convicted after the acquittal of the principal in the first degree. *Id.* § 130. In respect to the transaction in the barn, the opportunity for which the defendant had aided in producing, he may be deemed to have been constructively present. He left them there and remained but

a short distance from them, while his associates were engaged in the purpose of the interview, and without giving any explanation for doing so on the trial. The 'evidence permitted the inference by the jury, that the interview with Wigand there, was designed to furnish the opportunity to assert his execution of the forged note, and that the purpose was consummated in the fabrication of the note and sale of it, in which the defendant participated. People *v.* Ryland, 1 *N. Y. Cr.* 123. But the definition given by statute of a principal in a felony is such as to enable the jury upon the evidence to bring the defendant within it. *Penal Code,* § 29. And the rule in respect to the relative and independent liability of an accessory to be tried and convicted has been defined by the statute. *Id.* § 32. The acquittal of Potter was no legal interruption to the conviction and judgment.

The prosecution gave evidence to the effect that shortly before the transaction with Wigand, the defendant, Kennedy and Potter were together at another place with the farming mill, negotiating, or attempting to negotiate, with another person to take territory and sell the mills, which was taken against the objection and exception of the defendant's counsel, who contends that the admission of the evidence was error, because it related only to a distinct transaction. This act as such had no importance, but the evidence was competent as bearing upon the relation of the defendant to Kennedy and Potter, and his association with them in the business transaction with Wigand, and as tending to show a common interest and a common purpose.

The question would very properly arise whether he was only casually with them and without any concern in the business with Wigand or its purpose. And to aid in the determination of that question it was legitimate to prove that the defendant had or did on other occasions participate and act with those parties in the same business, to show that he had some relation to and interest with them, which could not be well shown in any other way. And circumstances, both prior and subsequently to the act in question, may characterize each other and point with more or less force to it, and aid in ascertaining whether or not such act was the product of the common

purpose of the defendant and the two other parties mentioned. The evidence did not tend to prove the commission of any other crime, and if the effect had tended in that direction, it may not have been incompetent in view of its purpose before mentioned. Bielschofsky *v.* People, 3 *Hun*, 40 ; affirmed, 60 *N. Y.* 616 ; Pierson *v.* People, 79 *N. Y.* 424 ; affirming 18 *Hun*, 239 ; Pontius *v.* People, 82 *N. Y.* 340.

When the evidence introduced was such as to justify the inference of common purpose or conspiracy, then evidence of the acts and declarations of any one of them relating to the matter of the charge in question was competent, although in the absence of the others, and the act of one in the same common object and purpose became that of all and each of them. 1 *Phil. Ev.* (C. & H. Ed.) 95 ; King *v.* Stone, *C. T. R.* 527 ; Am. F. Co. *v.* U. S., 2 *Peters*, 358 ; Reg. *v.* Murphy, 8 *Car. & P.* 297 ; Tappan *v.* Powers, 2 *Hall*, 277 ; Cuyler *v.* McCartney, 40 *N. Y.* 221 ; Dewey *v.* Moyer, 72 *N. Y.* 70. And this relation is assumed by a person whenever he concurs in the plans of the conspiracy and aids in the execution of them, although it is after its formation. People *v.* Mather, 4 *Wend.* 229, 261. And it may be inferred from circumstances. Jones *v.* Baker, 7 *Cow.* 445. There was evidence offered and received, tending to prove that after the parties were charged with this offense, they proceeded to provide false testimony to aid their defense. And for that purpose a statement was prepared, which was false, and a person procured to testify to it, which purported to be conversation between such person and Wigand, in which the latter stated that he gave the note in question. This person was a stranger to Wigand, and to prepare him to identify the latter, he was procured to go and see him, which he did, but did not speak to him.

The evidence tended to prove that the defendant participated in the preparation of this statement. The evidence was objected to and exception taken by the defendant's counsel. It was competent to prove that the defendant had sought and proceeded to fabricate evidence for the purpose of his defense, or had made use of illegitimate means and artifices to escape the consequences of crime, with the commission of which he was charged. *Wharton Cr. Law* (7th ed.) §§ 714, 715, 716, *et seq.;*

*Bemis Rep. of Webster case*, 210 ; S. C., 5 *Cush.* 295 ; State v. Williams, 1 *Williams* ( *Vt.*) 274 ; Collins v. Commonwealth, 12 *Bush*, 271 ; People v. Pitcher, 15 *Michigan*, 397.

And the same rule applies to the suppression or destruction of evidence. *Wharton*, §§ 722, 723. The evidence was rendered competent only by that which tended to connect the defendant with the act of its preparation, with knowledge of its falsity and purpose. It was sufficient in that respect to go to the jury, and the introduction of the evidence was not error.

The evidence as a whole was sufficient to permit the jury to find that the offense was committed and the defendant guilty. And no sufficient reason appears for disturbance of the verdict and judgment.

The judgment and orders should be affirmed.

BARKER, HAIGHT and CORLETT, JJ., concur.