## THE UNITED STATES OF AMERICA *vs.* YASUKICHI UCHIYAMA.

### November 9, 1909.

*Criminal law—Postal offenses—Outside cover or wrapper:* A string or cord or any other attenuated material in the nature of a string or cord, wrapped around papers or other mailable matter to hold it together for the purpose of mailing, together with any convenient arrangement, as for example a tag attached thereto for the purpose of affixation of postage stamps or writing of address, constitutes an "outside wrapper" in the meaning of section 3 of the postal law of June 18, 1888.

*Same:* And "any delineations, epithets, terms or language" forbidden by section 3 of the act of June 18, 1888, written upon such a tag, is written upon the "outside wrapper" within the meaning of the statute.

*Criminal Law:* Motion to discharge defendant.

*R. W. Breckons,* U. S. District Attorney, for the Government.

*J. Lightfoot,* Attorney for the Defendant.

WOODRUFF, J. The district attorney, in his opening address to the jury, stated that the alleged defamatory matter, in violation of section 3 of the act of June 18, 1888, as amended by act of September 26, 1888 (1 Supp. R. S., p. 621), was written in Japanese characters upon a tag fastened to a cord or string wrapped around a bundle of newspapers, and that the tag was attached to the enwrapping cord or string as a necessary means of affixing the postage stamps and showing the address to which the bundle of papers was mailed. When the opening address was concluded, counsel for the defendant moved that the defendant be discharged, on the ground that the statute in question made it a crime to expose defamatory matter on the envelope, cover or wrapper of matter otherwise mailable, and that this cord or string with its attached tag, and particularly the attached tag, could not be, under a proper construction of this criminal statute, considered either an envelope, cover or wrapper. The court heard argument on the motion, treating it as a motion for a directed verdict.

The contention of counsel for the defense, that the construction or interpretation of a criminal statute must be strict, and that in an effort to reach the intent of Congress, the court may not go outside of the actual words of the statute, is corroborated by the Supreme Court in the carefully considered case of *United States v. Bitty,* 208, U. S. 393, 402-403, wherein was quoted with approval earlier decisions by Chief Justice Marshall and Mr. Justice Story, to the effect respectively that,

" Though penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the legislature. The maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases which these words, in their ordinary acceptation, or in that sense in which the legislature has obviously used them, would comprehend. The intention of the legislature is to be collected from

the words they employ. * * * The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves did not suggest." *United States v. Wiltberger,* 5 Wheat. 76, 95, 96. And that, in construing criminal statutes, the proper course is "to search out and follow the true intent of the legislature, and to adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature." *United States v. Winn,* 3 Sumner, 209, 211: Fed. Case No. 16,740. See also, *United States v. Morris,* 14 Pet. 464; *American Fur Co. v. United States,* 2 Pet. 358, 367; *United States v. Lacher,* 134 U. S .624, 628; Sedgwick on Stat. Constr. (2nd ed.) 282; Maxwell on Interpretation of Statutes (2nd ed.) 318.

Following the authoritative principles quoted above, we turn to the statute in question and ask two questions:

*First.* What is the intent of Congress in the words "outside cover or wrapper," that is, what is "the mischief intended to be remedied" by the statute as shown by the words actually used?

*Second.* In accordance with Chief Justice Marshall's strong principle, does "the plain meaning of words" used in the statute justify this court in believing that an enwrapping string or cord with its attached tag, could constitute a "wrapper" within the meaning of the statute?

As to the first question, there is no doubt but that "the reason and policy of the enactment" (*United States v. Gee,* 45 Fed. 194) and "the spirit of the statute" to prevent or punish "the mischief contemplated" (*United States v. Dodge,* 70 Fed. 235, 236), namely, this certain misuse of the exposed portions of mail matter, would be violated if an expression prohibited by the statute were written upon a tag necessarily used for the affixation of postage stamps and writing of the address for matter sent through the mails. It is probable that the statute was strongly but indirectly aimed to protect parties to whom mail might be addressed. Nevertheless it is evident from the context, namely, from this and other postal laws, that the direct

intent of Congress was to protect the government, in its function as public mail carrier, from being made a tool or assistant toward the exposure of "any delineations, epithets, terms or language," which are *per se* of an "indecent, lewd, lascivious, obscene, libelous, scurrilous or threatening character," or if such delineations, epithets, terms or language are not *per se* of such character, to avoid becoming the accomplice of one using the exposed portion of the mails to portray " any delineations, epithets, terms or language * * * calculated by the terms, manner, or style of display, and obviously intended to reflect injuriously upon the character or conduct of another."

It is as though the government said that for the public welfare it had assumed the duty and function of public mail carrier, and for that very reason refused to have the exposed portions of the mail thus carried stained or degraded contrary to the dignity of the government by such prohibited delineations, epithets, terms or language. *United States v. Dodge,* 70 Fed. 235; *United States v. Burnell,* 75 Fed. 824.

So much for "the spirit of the statute" and "the mischief to be remedied." We would need to go no further in our consideration of the motion, if the intent of Congress only were to govern; but we have admitted that in construing a criminal statute it is not enough to be convinced of the intent, since that intent must be a reasonable deduction from the words of the statute itself. Let us then examine how Congress attempts to describe the exposed portions of mail matter, in order that we may see whether the enwrapping string and attached tag can reasonably be brought within the specific description? Except for reference to postal cards, we find that the only words to indicate such exposed parts of mail matter, are "envelope," "outside cover," and "outside wrapper." I repeat the word "outside" in conjunction with wrapper as well as cover, from the evident effect of the two conjunctions "or" used at this point. It is probable that an "envelope," which is also probably in all cases an "outside cover," means some conveniently prepared

receptacle into which the matter to be mailed can be readily inserted and secured by sealing or other means.    Therefore "envelope" could not apply to the string and tag in question. It is also probable that "outside cover," according to the clear decision of *United States v. Burnell,* (75 Fed. 824), is that portion of mailed matter which "overspreads or overlays the pamphlet or paper [matter] mailed"; "even though such cover be not an enclosing wrapper or cover" but that part of the matter mailed which in preparation for mailing is left exposed. It is not necessary to decide in this case whether the string and tag in question are an "outside cover." They probably are not. But they are as described by the prosecuting attorney in his opening address to the jury, which description led to the interposition of this motion, an "outside wrapper," and for that reason come within the statute provided any delineations, epithets, terms or language forbidden by the statute are written upon the tag.

The use of the word "wrapper" by Congress was certainly in the ordinary sense of that word as applied to mail matter. A "wrapper" is in common sense distinguished from an "envelope" by the fact that it is *wrapped* around the matter to be mailed instead of being so prepared that such matter can be inserted in it. Whether a "wrapper" is or is not also a "cover," depends upon its size compared with the matter mailed. It is a matter of common knowledge that wrappers of many kinds are used, and that they have a double purpose, first of binding or retaining the mail matter, and second of furnishing a convenient place for affixing the postage stamps and writing the address.    As we proceed from consideration of the kind of "wrapper" which is also a "cover," namely, one overlaying the entire matter to be mailed, to the "wrapper" which leaves the enclosed matter partially exposed, and from the "wrapper" made of paper to those made for convenience of other material, such as cloth, asbestos, etc., we come by the ordinary course of that reasoning which, conjoined with observation, produces the general knowledge of the people, through "wrappers" which

are part paper or cloth and part string or other attenuated material to those which might be mere pieces of tape wide enough to receive the address, and finally to those which, like the one in question, consist merely of a string or cord *wrapped* around the matter to be mailed to bind the whole together for mailing purposes. This string or cord is thus made a wrapper, but there must necessarily be some addition or attachment to the string in order to make the wrapper, when thus completed, not only available for binding or retaining the matter to be mailed, but also for affixing the postage stamps and receiving the address. This might be done in many conceivable ways. The use of the tag is the most ordinary one, and the one described by the prosecuting attorney in his address to the jury. Whatever is written upon this tag is written upon the "outside wrapper," because the tag is part, and a necessary part, of the wrapper, and whatever is written upon part of anything is written upon the thing itself.

The motion to discharge the defendant is denied.