VINCE CHHABRIA, United States District Judge
The question presented by this motion is whether showing a fake i.d. at a shooting range to use the range's guns for target practice can give rise to criminal liability for making a false statement in connection with the acquisition of a firearm from a federally licensed dealer. The answer is no, primarily because a shooting range is not a "licensed dealer" within the meaning of the federal gun control laws.
I.
The government is prosecuting Donnell Artis and his codefendants for a variety of federal crimes. Count three of the superseding indictment charges Artis with making a false statement during the acquisition of a firearm from a licensed dealer in violation of 18 U.S.C. § 922(a)(6). According to the government, Artis went to a shooting range and temporarily obtained guns from the proprietor for use on the premises, even though he is a convicted felon who is barred under federal law from possessing firearms. 18 U.S.C. § 922(g)(1). The government alleges that Artis showed the proprietor a fake i.d., presumably to avoid creating a paper trail that might later cause the authorities to discover his crime. Artis now moves to dismiss this count, contending that the conduct alleged-using a fake i.d. to obtain firearms from a shooting range for use at the shooting range-cannot give rise to a violation of section 922(a)(6).
II.
The failure of an indictment to state an offense is a "fundamental defect" that should be addressed as early as possible. United States v. Pheaster , 544 F.2d 353, 361 (9th Cir. 1976) ; see Fed. R. Crim. P. 12(b)(3)(B)(v). To determine whether an indictment adequately alleges a crime, the court must presume the allegations to be true and read the indictment in a "common sense, nontechnical fashion." United States v. Lo , 231 F.3d 471, 481 (9th Cir. 2000) ;
*1204 see also United States v. Boren , 278 F.3d 911, 914 (9th Cir. 2002). If the scope of a criminal statute is not clear, the statute should be construed narrowly. Rewis v. United States , 401 U.S. 808, 812, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971). Although the government pays lip service in its brief to the potential need for further factual development before deciding whether it can obtain a conviction under count three, it does not explain what facts might be needed. Since the question of whether showing a fake i.d. at a shooting range violates section 922(a)(6) is legal rather than factual, the Court decides that question now.
III.
As pertinent to this case, section 922(a)(6) criminalizes making a false statement to a "licensed dealer" of firearms, where that false statement is made in connection with the "acquisition" of a firearm, and where the statement is likely to deceive the licensed dealer with respect to the lawfulness of the "sale or other disposition" of the firearm. In full, section 922(a)(6) makes it unlawful
for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer , or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.
As the government has acknowledged, a shooting range does not need a federal license to operate, nor does federal law require shooting ranges to conduct background checks before providing guns for use on the premises. However, the shooting range involved here-Jackson Arms Shooting Range and Gun Shop-also happens to sell firearms as a "licensed dealer" within the meaning of section 922(a)(6). When Jackson Arms sells firearms as a licensed dealer, it is required by federal law to conduct background checks on would-be purchasers. Accordingly, the statutory interpretation questions presented by this motion are: (1) whether a person who temporarily obtains a firearm from a shooting range for use at the range makes an "acquisition" of the firearm; and (2) if so, whether the acquisition is from a "licensed dealer" simply because the operator of the shooting range happens to be a licensed dealer when acting in another capacity (namely, when selling firearms).
The first question is a close one. Viewing the statutory language in isolation (that is, before considering the case law), it seems unlikely that an ordinary person would understand the temporary use of a proprietor's gun at a shooting range to be an "acquisition." Merriam-Webster defines "acquisition" as "the act of acquiring something." In turn, it defines "acquire" as "to get as one's own." And it provides three examples of getting something as one's own: "The team acquired three new players this year," "acquire fluency in French," and "acquire tolerance to antibiotics." Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/acquisition; http://www.merriam-webster.com/dictionary/acquire. None of this seems similar to going to a shooting range and paying to use the proprietor's gun in target practice on the premises.
On the other hand, the case law suggests a more expansive definition of "acquisition." For example, in 1974, the Supreme Court considered whether someone "acquires" a firearm when he redeems the firearm from a pawnshop, having previously pawned it. (A pawnshop that deals in *1205 guns must be a federally licensed dealer.) The Court held that "acquisition" from a firearms dealer in section 922(a)(6) is the corollary of "disposition" by a firearms dealer in that same provision: if the dealer is "disposing" of a firearm and you get it, you have "acquired" it. Huddleston v. United States , 415 U.S. 814, 820, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974). According to the Court, when you redeem your gun from the pawn shop, the pawn shop is "disposing" of it. This is so even though the pawn shop never obtained title to the firearm, and therefore is not transferring title to the person redeeming it. The Court cited a 1966 definition from Merriam-Webster, which defined "acquire" as "to come into possession, control, or power of disposal of." Id. "There is no intimation here," the Court stated, "that title or ownership would be necessary for possession, or control, or disposal power, and there is nothing else in the statute that justifies the imposition of that gloss." Id.
The Court adopted this interpretation, in part, to effectuate Congressional intent behind the federal firearms statute, which was to cover "all transfers of firearms by dealers to recipients," out of concern "with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest." Id. at 823-24, 94 S.Ct. 1262. "Although penal laws are to be construed strictly," the Court explained, "they 'ought not to be construed so strictly as to defeat the obvious intention of the legislature.' " Id. at 831, 94 S.Ct. 1262 (quoting American Fur Co. v. United States , 27 U.S. 358, 367, 2 Pet. 358, 7 L.Ed. 450 (1829) ); see also United States v. Johnson , 459 F.3d 990, 998 (9th Cir. 2006) (refusing to recognize an "innocent possession" defense to the felon-in-possession statute for someone who alleged he randomly found a gun and picked it up to turn it in, partly because doing so "would thwart congressional purpose").
Although the federal firearms regime may be expansive, it does not automatically follow from these cases that "acquisition" must be construed so broadly as to apply to Artis's alleged conduct in this case. A person might "acquire" a gun when redeeming it from a pawn shop or while randomly picking it up off the ground, but not when he goes to a shooting range and pays to use the proprietor's gun. Rather, he might have temporarily possessed the gun without ever acquiring it-that is, without gaining the power to control or dispose of the gun.
Consider the following example. When you go to a bowling alley and rent a pair of bowling shoes from the facility, you probably don't feel as if you've "acquired" those shoes. You're certainly using the shoes (as part of the price of bowling), and perhaps you temporarily "possess" them, but you probably don't think you've acquired them. This is in contrast to a person who redeems a gun from a pawn shop (like in Huddleston ) or a person who finds a gun on the ground and picks it up (like in Johnson ).
Although the first question may be close, the answer does not matter, because the next question-whether a shooting range is a "licensed dealer" in a context like this-is easy. As previously mentioned, the shooting range in this case is called Jackson Arms Shooting Range and Gun Shop. As the name suggests, there are two operations on the premises: the company operates a shooting range, and it sells guns. Jackson Arms needs a federal firearms license to sell guns, but not to operate a shooting range. 18 U.S.C. § 923 ; 27 C.F.R §§ 478.41, 478.97(b) ; see also 18 U.S.C. §§ 921(a)(9) - (a)(13). And as the government acknowledges, while Jackson Arms must conduct background checks pursuant to the federal gun control statutes when it sells guns, it merely asks *1206 (apparently voluntarily) users of the shooting range to fill out a form and show i.d. Therefore, the shooting range operation falls outside the scope of the federal license possessed by Jackson Arms. Put another way, when Jackson Arms operates the shooting range, it is not acting in its capacity as a federally licensed dealer. By definition, then, even if Artis could be said to have "acquired" the guns, his "acquisition" was not from a "licensed dealer" within the meaning of the statute, nor was his false statement likely to deceive a licensed dealer.
The government contends it doesn't matter that Jackson Arms was not acting in its capacity as a licensed dealer when it provided guns for Artis to shoot on the range. It's enough, according to the government, that Jackson Arms just happened to be a licensed dealer. There are several problems with this argument.
First, it seems contrary to the very authority the government relies on. As the Court explained in Huddleston , "the focus of the federal scheme [of which section 922(a)(6) is a part] is the federally licensed firearms dealer." 415 U.S. at 825, 94 S.Ct. 1262. The Congressional purpose was to channel sales through licensed dealers, so that the government could regulate those sales and keep guns away from people who shouldn't have them. Id. at 824, 94 S.Ct. 1262 ; see also Abramski v. United States , --- U.S. ----, 134 S.Ct. 2259, 2267, 189 L.Ed.2d 262 (2014). If the focus of the scheme is on subjecting certain conduct to a licensing requirement, why should the prohibition on false statements in section 922(a)(6) apply in contexts where the licensing requirement does not apply?
Second, and relatedly, the government's "it doesn't matter" argument is in tension with the principle that the scope of a federal dealer's license is strictly limited. Federal firearms licenses are not transferable, and they last for only three years before they must be renewed. 27 C.F.R. §§ 478.45, 478.49, 478.51. Each license covers only the class of business or the activity specified in the license. 27 C.F.R. § 478.50. In addition, each license covers only a specific location, meaning that a company must get separate licenses for each location where it conducts activity regulated by the statute. Id. Indeed, the government prosecutes people for conducting business outside the scope of their license. See, e.g. , United States v. Ogles , 406 F.3d 586, 595 (9th Cir. 2005), aff'd on reh'g on other grounds , 440 F.3d 1095 (9th Cir. 2006). And rightly so, because when someone engages in activity regulated by the statute, but does so outside the scope of their license, they are not, for purposes of that activity, a licensee at all. For similar reasons, it would be a real stretch to say that a false statement to a shooting range is a false statement to a licensed dealer just because the operator of the shooting range happens to have a license that authorizes other conduct. That sort of stretch would not be appropriate here, particularly given the need to construe ambiguous criminal statutes narrowly, and particularly when it's already a stretch to say that Artis "acquired" the firearm or that Jackson Arms "disposed of" it by letting Artis shoot it on the range.
IV.
The motion to dismiss count three of the superseding indictment is granted.
IT IS SO ORDERED.