**BANKS v. UNITED STATES.**

No. 14648.

United States Court of Appeals
Eighth Circuit.

May 27, 1953.

Rehearing Denied June 16, 1953.

See, also, D.C., 108 F.Supp. 14.

John W. Graff, St. Paul, Minn. (Jerome Hoffmann and Richard E. Kyle, St. Paul, Minn., on the brief), for appellant.

Murray L. Schwartz, Sp. Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and Meyer Rothwacks, Sp. Assts. to Atty. Gen., and Philip Neville, U. S. Atty., St. Paul, Minn, on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

Thomas W. Banks was indicted, tried and convicted on three counts of an indictment which charged that he had willfully and knowingly attempted to evade his income taxes for the years 1945, 1946, and 1947, in violation of § 145(b) of the Internal Revenue Code, 26 U.S.C.A. § 145(b).[1]

---

[1] 26 U.S.C.A.

"§ 145. Penalties * * *

"(b) Failure to collect and pay over tax, or attempt to defeat or evade tax. Any person required under this chapter to collect, account for, and pay over any tax imposed by this chapter, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

The indictment was returned by the Grand Jury on January 14, 1952. On February 18, 1952, the defendant moved to dismiss the indictment and to require the taking of testimony of the members of the grand jury and the production of the transcript of the proceedings before the grand jury. The United States voluntarily filed two bills of particulars. A motion for a further bill of particulars was overruled. After defendant had been arraigned and entered a plea of not guilty he renewed his motion to dismiss the indictment, require the testimony of the grand jury to be taken and to produce the transcript of the testimony. Both motions were denied.

On May 20, 1952, prior to the introduction of evidence one juror was released by the trial judge on the ground that he was disqualified and an alternate juror was substituted for him.

The trial was concluded on May 30, 1952. The defendant offered no evidence but moved for a judgment of acquittal. The motion was denied, and the jury returned a verdict of guilty on each of the three counts. On June 23, 1952, the court imposed a general sentence of three years' imprisonment and a fine of $10,000. Notice of appeal was filed June 30, 1952.

The trial was commenced on May 19, 1952, and concluded on May 30th. The defendant's brief fills 115 printed pages and cites 40 cases, four text books, two statutes and two Federal Rules of Criminal Procedure, 18 U.S.C.A. To discuss each point and each argument separately would extend this opinion to unreasonable length.

The defendant contends that the court erred: 1. In refusing to dismiss the indictment; 2. In dismissing a juror and substituting an alternate; 3. In holding that the evidence was sufficient to support the conviction on each of the three counts; 4. In denying his request for a further bill of particulars; 5. In receiving in evidence the testimony of witnesses Weinstock, O'Gordon and Kleven, together with certain exhibits; 6. In permitting the government attorney to comment prejudicially on defendant's failure to take the witness stand in his own defense; 7. In failing to give requested instructions and in giving certain instructions; and 8. In admitting incompetent evidence.

The defendant's first contention, namely, that the court erred in refusing to dismiss the indictment upon defendant's motion is predicated upon two subordinate contentions: first, in general, that there was no competent evidence to support a finding by the jury that the defendant willfully attempted to evade and defeat a tax; and, second, the court erred in refusing to permit the evidence before the grand jury to be made available to the defendant and his counsel.

 The court properly instructed the jury that the defendant is presumed to be innocent of the crimes alleged against him in the indictment, and that the burden was upon the government to prove him guilty beyond a reasonable doubt. That burden in this case, in which a violation of § 145 (b) of the Internal Revenue Code, supra, is charged, required proof (1) that a tax was due from defendant to the government for each of the years charged; (2) that the defendant attempted to evade payment of that tax; and (3) that his attempt so to evade payment was willful.

 Failing to secure the cooperation of the defendant in its investigation of his income for the years involved, the government used the net worth and gross expenditures method of proving the increase in defendant's net worth from year to year. This method has been approved by this and other courts. Leeby v. United States, 8 Cir., 192 F.2d 331; Schuermann v. United States, 8 Cir., 174 F.2d 397; Pollock v. United States, 5 Cir., 202 F.2d 281; United States v. Yeoman-Henderson, Inc., 7 Cir., 193 F.2d 867; Gariepy v. United States, 6 Cir., 189 F.2d 459; Bell v. United States, 4 Cir., 185 F.2d 302; Brodella v. United States, 6 Cir., 184 F.2d 823. The purpose of the government's evidence by this method is to show that the net worth of the taxpayer increased from year to year from a fixed starting point in amounts greater than shown on his income tax returns.

Here the government used as the starting point the net worth of defendant at the end of the year 1936 as determined

from his own affidavit filed with the Bureau of Internal Revenue in 1937. Starting with the date given in that affidavit the investigators for the government found defendant's net worth at the end of the year 1936 to be $18,578.78.

The government introduced evidence to show that defendant's net worth increased thereafter so that at the close of 1944 it was $231,029.26; in 1945 it was $270,968.33; in 1946 is was $296,087.27; and in 1947 it was $322,877.34. The defendant's taxable net income as reported in his returns for the three years involved was for 1945, $20,170.-11; for 1946, $27,100.99; and for 1947, $20,609.29. His taxable net income as claimed by the government was for 1945, $43,690.11; for 1946, $36,799.97; and for 1947, $41,453.07. And his federal income taxes which should have been reported and paid, but were not, were for 1945, $15,044.-06; for 1946, $5,829.41; and for 1947, $12,-067.55.

In arriving at these figures the government investigators compiled and analyzed statistics for the years 1936 to and including 1947 showing defendant's cash deposits in banks, his United States bonds purchased and held, his receivables, his investments in marketable stocks and bonds, stocks of operating companies, investments in real estate and other property, and his liabilities for mortgages, other loans and accounts payable; and from all such data arrived at a statement of his taxable income for all three years.

■ This written undisputed evidence was all introduced in evidence by the government; and it was sufficient to warrant the submission of the case to the jury and to support the verdict, requiring an affirmance of the judgment, unless some other alleged error of the court requires a reversal. Pollock v. United States, 5 Cir., 202 F.2d 281.

We shall next consider defendant's objections to the grand jury proceedings. It is asserted that the court erred in refusing to permit the evidence taken before the grand jury to be made available to the defendant and to his counsel. It is the law that matters occurring before a grand jury may not be disclosed to the defendant or to his counsel unless "permitted by the court * * *." Rule 6(e) of the Federal Rules of Criminal Procedure. Two judges in this case denied the motions of defendant calling for a transcript of the evidence taken before the grand jury. The question for decision here, therefore, is whether the rulings of these judges upon the motions so made were an abuse of discretion on their part. .

The motions in question asked the court—

"1. To dismiss the indictment * * *;

"2. To require the members of the grand jury * * * to disclose matters occurring before such grand jury; and

"3. To permit the furnishing to counsel for defendant of a stenographic report of the proceedings before the grand jury when the case against the defendant was presented."

Counsel for defendant filed with the motion his affidavit in which he avers that he had investigated the circumstances pertaining to the proposed prosecution of his client; that he had been informed that representatives of the newspapers were outside the grand jury room on the morning of January 14, 1952, when the grand jury was in session; that it appeared in one newspaper of January 15, 1952, that the grand jury was called into session at 10:00 a. m. to receive instructions; that at 10:30 a. m. that same day it commenced hearing testimony; that at 11:30 a. m. word was sent that it was ready to report; and that it made its report at 11:45 a. m. It was further averred that only one witness was called before the grand jury and that such witness was the special agent of the Intelligence Unit of the Bureau of Internal Revenue who directed the investigation of the taxpayer's affairs.

■■ It developed that the special agent referred to was George H. McKusick who testified at the trial and whose testimony for the government is reviewed above. He testified as to the method adopted, that is the net worth method, and the findings of the investigators. Reviewing that evidence indicates that not more than an hour or at most an hour and a half would be necessary

to place it before a grand jury or a petit jury in case no time was consumed by counsel's objections and arguments to the court on admissibility. The evidence was admissible not only before the grand jury but also upon the trial. We do not think the judges abused their discretion in denying the motion.

Further a trial court's exercise of discretion in denying a motion to quash or dismiss an indictment because of irregularity, if any, in grand jury proceedings is not ordinarily reviewable. United States v. Holmes, 3 Cir., 168 F.2d 888. The same rule applies to defendant's motion for a bill of particulars. United States v. Rosenburgh, 7 Wall. 580, 74 U.S. 580, 19 L.Ed. 263; Wong Tai v. United States, 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545; Knauer v. United States, 8 Cir., 237 F. 8; Stewart v. United States, 8 Cir., 300 F. 769; Bedell v. United States, 8 Cir., 78 F.2d 358; Pines v. United States, 8 Cir., 123 F.2d 825; Braatelien v. United States, 8 Cir., 147 F.2d 888.

It is next contended that the court erred in receiving the testimony of one Joseph A. O'Gordon and Exhibits 70 and 71. Reference to the testimony discloses that O'Gordon representing the defendant in the fall of 1950 discussed with representatives of the Bureau of Internal Revenue some aspects of defendant's business. The revenue officer submitted to O'Gordon a list of questions to which he requested answers. Answers of the defendant were obtained by O'Gordon on a separate sheet of paper and delivered to the revenue agent. O'Gordon was called as a witness by the government and identified the paper containing the list of questions as Exhibit 70 and the paper containing the answers as Exhibit 71. They were received in evidence over the objection of counsel for defendant.

The objection was on two grounds: first, that the lawyer-client relation existed between defendant and O'Gordon and the answers were privileged, and further they were incompetent because they were submitted as part of a proposed settlement of a civil case. O'Gordon at the time in ques-

tion was not negotiating with the revenue officer as a mere attorney. He was acting as defendant's agent with a power of attorney. In that capacity he secured defendant's answers to the questions submitted and returned them to the officer. Under these circumstances they were admissible. In American Fur Co. v. United States, 2 Pet. 358, 364, 27 U.S. 358, 364, 7 L.Ed. 450, the Supreme Court say: " * * whatever an agent does or says, in reference to the business in which he is at the time employed, and within the scope of his authority, is done or said by the principal; and may be proved, as well in a criminal as a civil case; in like manner as if the evidence applied personally to the principal." The testimony objected to here was clearly admissible. Himmelfarb v. United States, 9 Cir., 175 F.2d 924. The information requested was furnished by Banks to O'Gordon for the sole purpose of giving it to McKusick in answer to McKusick's questions. O'Gordon was therefore acting within the scope of his authority as Banks' agent.

The defendant next contends that the court erred in admitting the testimony of the witness Gerald O. Kleven, an expert called by the government, and in admitting Exhibits 224, 225, 226, and 227.

Exhibit 224 is a summary of all the evidence in the case. Exhibit 226 consists of a calculation by the witness of the differences between the net income reported by the defendant in his income tax returns and the net income shown by the government's evidence, including the amount of taxes due according to each such net income and the differences between the taxes so calculated. Exhibits 225 and 227 are merely enlarged copies of exhibits 224 and 226 respectively.

That such expert testimony is admissible in cases of this character has been decided by this court and other courts frequently. See Myres v. United States, 8 Cir., 174 F.2d 329, certiorari denied 338 U.S. 849, 70 S.Ct. 91, 94 L.Ed. 520; Kirsch v. United States, 8 Cir., 174 F.2d 595; Cave v. United States, 8 Cir., 159 F.2d 464, certiorari denied, 331 U.S. 847, 67 S.Ct. 1732, 91 L.Ed. 1856, re-

hearing denied, 332 U.S. 786, 68 S.Ct. 34, 92 L.Ed. 369; Gleckman v. United States, 8 Cir., 80 F.2d 394, certiorari denied, 297 U.S. 709, 56 S.Ct. 501, 80 L.Ed. 996; United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546.

Counsel for defendant in their brief say: "While there is an appropriate area in tax cases of this kind for expert testimony * * * there are limitations as well", and they contend that this case comes within those limitations. Attention is first directed to the case of Kirsch v. United States, supra, in which this court reversed the conviction of the taxpayer because the witness assumed without qualification that all of the defendant's deposits in a certain account represented income for tax purposes, although the government's own evidence showed that a large part of the deposits did not represent income. That is not the situation here. The Kirsch case is not in point. Other objections to these exhibits are trivial and without merit.

■■■■ Defendant contends further that the court erred in admitting the testimony of Leonard H. Weinstock as to the defendant's living expenses for the years 1945, 1946, and 1947. It will be recalled that Mr. George H. McKusick was in charge of the investigation of defendant's income for the years involved. Defendant gave Weinstock a power of attorney to represent him in conferences with McKusick. McKusick furnished Weinstock a copy of his estimate of defendant's living expenses for submission to defendant. Weinstock was called as a witness to testify to the schedule of living expenses for the years in question, but claimed to have forgotten the amounts agreed upon, whereupon he was cross-examined by counsel for the government over objection of defendant's counsel. There was no error in admitting his testimony under these circumstances. It is the law that where a party, in good faith, has called a witness in his behalf and is surprised by his adverse testimony, he may, in the court's discretion, be allowed to cross-examine or to show by others, that the witness has previously made statements materially at variance with his present testimony. Ellis v. United States, 8 Cir., 138 F.2d 612; Lewis v. United States, 8 Cir., 153 F.2d 724.

■■■■ The defendant complains that the court erred in dismissing a juror after he had been selected and substituting an alternate for him. The court consistent with the provisions of Rule 24 of the Federal Rules of Criminal Procedure examined the prospective jurors on their voir dire. The next morning after the jury and the alternates had been selected the court directed that the juror in question be brought before the court from the jury room when he was reminded that at the voir dire on the preceding day in answer to a question he stated that he had his tax matters all straightened out with the government. Upon further questioning by the court it then developed that he had trouble over his tax problems with the government in 1945; that he had made returns for 1948 and 1949; that he had not paid all the taxes due for those years and that he had not made a return for 1950 or 1951, but that he had intended to do so. The court thereupon excused him from the jury and substituted an alternate juror. It is clear that on his voir dire examination the juror, whether intentionally or not, misled the court and counsel in reference to his tax troubles with the government. Under these circumstances the court did not abuse its discretion in dismissing the juror and substituting an alternate. No good reason to the contrary is suggested by counsel for defendant. His contention is that defendant was entitled to have the juror remain on the panel. But no proceedings other than the selection of the jury had been had. Under these circumstances the defendant's contention is without merit.

■■■■ Another contention of defendant is that the evidence fails to disclose an affirmative willful attempt to evade and defeat a tax and hence there is no offense under 26 U.S.C. § 145(b). To support this contention the case of Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 368, 87 L.Ed. 418, is cited. In fact the opinion in that case supports his conviction, and not his contention. That opinion, quoted by de-

fendant in his brief, points out that a willful attempt to evade may be inferred by "* * * concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal. If the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes such as concealment of other crime."

Here the evidence shows that defendant failed to report his entire income for taxation; that he paid only a part of the taxes which he should have paid. He held property in the names of nominees; he procured cashier's checks with which he paid for property.. He did not furnish to his attorney, Mr. Weinstock, who made out his income tax returns,. information necessary to make accurate returns. A part of such information which he furnished was on adding machine tape. He simply told Weinstock that the source of such income was "wagering." This, of course, referred to a part of his income only. The evidence shows that the total income included in his returns was much less than his actual income. The jury could very well find from all the testimony that defendant willfully attempted to evade and defeat his federal income taxes.

It is further charged that government attorneys prejudicially commented on the failure of defendant to take the witness stand in his own defense. No direct charge of that kind was made by government counsel. What occurred in substance was that in argument to the jury and in analyzing the government's evidence they pointed out that the government's evidence was undisputed.

█ No objections were made nor exceptions taken to these references at the time they occurred. Such references did not directly call the attention of the jury to. the fact that defendant did not testify and no comment was made on his failure to testify further than to point out that the government's testimony was undisputed. In this situation there is no question to review.

Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704. Further, "The statement of counsel that certain evidence is not denied is not a violation of the safeguard vouched an accused by the law." Baker v. United States, 8 Cir., 115 F.2d 533, 544, certiorari denied, 312 U.S. 692, 61 S. Ct. 711, 85 L.Ed. 1128. In the cited case the court quotes with approval the statement of the court in Lefkowitz v. United States, 2 Cir., 273 F. 664, 668, that "It is only objectionable to comment upon the failure of the defendant personally to testify; and if at the close of the whole case any given point stands uncontradicted, such lack of contradiction is a fact, an obvious truth, upon which counsel are entirely at liberty to dwell."

█ Here there was no direct reference to the failure of Banks to testify. The law was not, therefore, violated. In Morrison v. United States, 8 Cir., 6 F.2d 809, 811, Judge Booth speaking for this court said: "Comment by court and counsel that certain testimony is uncontradicted is common, oftentimes helpful, and very generally held to be without error." Citing authorities.

█ Counsel for defendant requested 14 numbered instructions to be given to the jury. His careless criticism of the court is illustrated by his assigned error for alleged failure to give these instructions. His first requested instruction reads:

"For proof of its case, the government relies upon circumstantial evidence. Circumstantial evidence consists of facts proved from which the jury may infer by process of reasoning certain ultimate facts. A conviction may be had upon circumstantial evidence, but to warrant a conviction on such evidence the proven facts must not only be consistent with the hypothesis of guilt and point surely and solely in the direction of guilt, and must clearly and satisfactorily exclude every other reasonable hypothesis except that of guilt."

In his brief counsel says: "Requested instruction No. 1 pertained to circumstantial evidence and while the court did state

something about circumstantial evidence it refused to state that the government relied upon circumstantial evidence."

A comparison of the requested instructions with the instructions given is convincing that the court most carefully protected the rights of the defendant and that as a whole the given instructions were more favorable to the defendant than were the requested instructions. The court gave requested instruction No. 1 on circumstantial evidence in the exact language of the request.

The whole record discloses, we think, that the defendant had a fair trial. The judgment appealed from is accordingly

Affirmed.