Thomas W. BANKS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 14648.

United States Court of Appeals Eighth Circuit.

June 28, 1955.

Rehearing Denied July 25, 1955.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

Appellant, Thomas W. Banks, was indicted, tried and convicted in the District Court of Minnesota, for willfully and knowingly attempting to evade his income taxes for the years 1945, 1946 and 1947, in violation of § 145(b) of the Internal Revenue Code, 26 U.S.C.A. Upon appeal to this court the judgment of conviction was affirmed on May 27, 1953. 8 Cir., 204 F.2d 666. The Supreme Court denied a petition for certiorari, 346 U.S. 857, 74 S.Ct. 73, 98 L.Ed. 370. Thereafter the order denying certiorari was vacated and the case was restored to the docket of the Court. 347 U.S. 1007, 74 S.Ct. 861, 98 L.Ed. 370.

The charge of income tax evasion against appellant was proved by the government by the net worth method. On December 6, 1954, the Supreme Court decided four other net worth cases: Holland v. United States, 348 U.S. 121, 75 S.Ct. 127; Friedberg v. United States, 348 U.S. 142, 75 S.Ct. 138; Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, and United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186.

On January 10, 1955, a petition for certiorari was granted; the judgment was vacated, and the case was remanded to this court "for consideration in the light of Holland v. United States", and the Friedberg, Smith and Calderon decisions of the Supreme Court.

On January 24, 1955, this court entered an order placing the case upon the calendar of the court for rehearing at the March, 1955, session and limiting the argument of counsel to the question of alleged errors of the trial court in its rulings with reference to the admissibility or sufficiency of the evidence admitted or rejected as proof of net income under the so-called net worth method and to any alleged error in the instructions of the court relating to such net worth method.

Joseph A. Maun and John W. Graff, St. Paul, Minn., for appellant.

George E. MacKinnon, U. S. Atty., St. Paul, Minn. (Clifford Janes and Alex Dim, Asst. U. S. Attys., St. Paul, Minn., on the brief), for appellee.

Elaborate printed briefs have been filed by the parties and the case has been argued orally. Basically counsel for appellant contend that the trial court erred in denying appellant's motion for a judgment of acquittal or for a new trial. In support of this general contention counsel argue that

1. The government's case was founded upon uncorroborated admissions of appellant;

2. The government failed to investigate leads available to it independently to verify the uncorroborated admissions of appellant; and

3. The court erred in failing to give certain requested instructions.

It will be noted that appellant did not testify in his own behalf at the trial and he offered no evidence to explain or deny the charge in the indictment or the evidence of the government.

The facts in the case and the contentions of appellant on the appeal are related and considered by this court in the opinion reported in 204 F.2d 666, supra.

■■■ Appellant urges most emphatically that the government's case was founded upon his own uncorroborated admissions. The rule requiring corroboration of admissions and confessions in criminal cases, and particularly in "net worth" cases is stated and discussed at length by the Supreme Court in Smith v. United States, 348 U.S. 147, 156, 75 S.Ct. 194, 199, in which it is said:

"There has been considerable debate concerning the quantum of corroboration necessary to substantiate the existence of the crime charged. It is agreed that the corroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance, as long as there is substantial independent evidence that the offense has been committed, and the evidence as a whole proves beyond a reasonable doubt that defendant is guilty. (Citations.) But cf. United States v. Fenwick, 7 Cir., 177 F.2d 488. In addition to differing views on the substantiality of specific independent evidence, the debate has centered largely about two questions: (1) whether corroboration is necessary for all elements of the offense established by admissions alone (citations), and (2) whether it is sufficient if the corroboration merely fortifies the truth of the confession, without independently establishing the crime charged, compare (citations). We answer both in the affirmative. All elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused."

The record here discloses that the trial court throughout the trial and in his instructions to the jury carefully protected appellant's constitutional rights, especially his right to the presumption of innocence until the evidence of the government established his guilt beyond a reasonable doubt.

■■■ We shall first consider the contention that the government's case was founded upon uncorroborated admissions of the appellant. This contention refers to (1) the opening net worth statement for 1936, and (2) the net worth and income for the taxable years 1945, 1946 and 1947. Both contentions are without merit.

The opening or beginning net worth used by the government in its computations was established at $18,578.58 as of the end of the year 1936. This was based upon an affidavit executed by appellant on July 2, 1937, in which he listed his assets as of December 31, 1936. The affidavit was filed by appellant in connection with his defense in a claim then pending against him for unpaid taxes. It is corroborated by the investigations of the revenue agents made soon after it was filed and again after the initiation of the present case. Their tes-

timony fully and adequately corroborates the admissions made in the affidavit.

█ It is next contended that appellant's admissions in exhibits 70 and 71 were not adequately corroborated. These exhibits were connected with the investigations made by the government of appellant's income and his tax returns for the years involved. Agent George H. McKusick of the Bureau of Internal Revenue was conducting the investigations. In December, 1950, McKusick requested appellant to come to a conference for the purpose of substantiating his tax returns for the years 1945, 1946 and 1947. Appellant refused to come to such a conference but instead sent his attorney, Mr. Joseph A. O'Gordon, with a power of attorney. It developed that Mr. O'Gordon, although he had a power of attorney, could not answer any questions relating to the income or business of the appellant. McKusick then submitted to him a list of questions (exhibit 70) concerning appellant's business transactions which had been discovered in the investigations and requested him to obtain the answers of appellant. In the following February Mr. O'Gordon returned the questions with the answers of appellant on a separate sheet of paper (exhibit 71). Mr. O'Gordon testified at the trial and identified the exhibits.

█ The admissions in these exhibits amply support the verdict of the jury. And the admissions are amply corroborated by the evidence. They are corroborated in part by appellant's income tax returns, in part by his wife's returns and by bank accounts in her name but which consisted of deposits of appellant's money. These admissions are corroborated by the undisputed evidence that most of the items were received by appellant from the sale of property or corporate stocks and deposited in his wife's bank account but not reported by her as taxable income. Properties were sold which were owned jointly by appellant and some other person. The other person reported his share of the proceeds of such sales but appellant did not include any part of his share in his tax returns.

Without detailing here all of such transactions shown in the record we are satisfied that all of the admissions referred to are amply corroborated. The requirements of the Supreme Court in the Smith case, supra, are fully met, wherein the Court say, 348 U.S. at page 156, 75 S.Ct. at page 199:

"All elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense 'through' the statements of the accused." Citing Parker v. State, 228 Ind. 1, 88 N.E.2d 556, 89 N.E.2d 442.

This statement of the Court applies with particular emphasis to appellant's admissions of his living expenses for the taxable years involved. Revenue Agents McKusick and Kleven conducted an investigation of the living expenses of appellant for the three years involved and submitted their findings to appellant's attorney, O'Gordon, and his accountant, Weinstock, both of whom had filed powers of attorney from appellant with the agents. The estimates were submitted by them to appellant and they reported that he would "be happy to use the figures." Thus the independent evidence of O'Gordon and Weinstock "bolstered the confession itself and thereby proved" the amount determined "'through' the statements of the accused."

█ Appellant's second contention is that the government failed to investigate leads available to it or independently to verify the uncorroborated admissions of the defendant. This contention is without merit and is not applicable to the situation presented here. The admissions referred to are to be found in exhibits 33, 70 and 71. In this case the investigation by the revenue agents preceded the admissions of appellant. The answers and statements of appellant in these exhibits referred only to matters which had been previously investigated by the government. The answers to the questions demonstrated the guilt of ap-

pellant and they were corroborated in each instance.

The word "leads" is explained in the Holland case, 348 U.S. 121, 135, 136, 75 S.Ct. 127, 135, as follows:

"When the Government rests its case solely on the approximations and circumstantial inferences of a net worth computation, the cogency of its proof depends upon its effective negation of reasonable explanations by the taxpayer inconsistent with guilt. Such refutation might fail when the Government does not track down relevant leads furnished by the taxpayer—leads reasonably susceptible of being checked, which, if true, would establish the taxpayer's innocence. When the Government fails to show an investigation into the validity of such leads, the trial judge may consider them as true and the Government's case insufficient to go to the jury."

Appellant's argument overlooks the fact that the admissions in exhibits 33, 70 and 71 were his own statements in answer to questions of the revenue agents and that they were all connected with the investigations made by the revenue agents. Each admission had already been investigated. There was no necessity for further following up the admissions with further investigation. The corroboration of these admissions was sufficient to meet the suggestions and requirements of the Holland case. If any of the facts admitted in any way proved the innocence of appellant the evidence warranted the submission of that issue to the jury.

Finally it is contended that the court erred in failing to give certain requested instructions.

■ In summary the contention is that the court failed (1) to give defendant's requested instruction No. 11, and (2) to give any instruction relative to the net worth theory of proof on tax evasion.

Requested instruction No. 11 reads:

"In this case the government relies on a claimed increase in the defendant's net worth in the years 1945, 1946 and 1947 to prove claimed unreported income during said years. The government's case must fail if the claimed net worth of the defendant at the starting point of the periods in question is not correct and has not been established beyond a reasonable doubt. A correct starting point must include all of the defendant's assets at that time as well as all of his liabilities. It is also incumbent upon the government to exclude any reasonable probability that the increase in net worth is attributable to capital assets or accumulations by the taxpayer in periods prior to the starting point of the net worth period in question.

"In addition to establishing a correct starting point, it is incumbent upon the government to prove beyond a reasonable doubt the defendant's net worth for each year from the starting point up to and including the year 1947."

We have carefully reviewed all fourteen instructions requested by counsel for appellant as well as all the instructions given by the court and we are convinced there is no merit in appellant's contentions. The Supreme Court in the Holland and Smith cases, supra, recognized that the net worth method of proof consists of circumstantial evidence; and the trial court gave defendant's requested instruction No. 1 on circumstantial evidence in the exact language of the request.

■ The instructions given by the court protected every right of the defendant and presented and submitted his claims fairly to the jury. Counsel criticise the instructions because they do not use the term "net worth method." There was no dispute, however, in regard to the character of the net worth method. It was and is a circumstantial evidence method of proof, and the instructions given covered every element of the contentions of the parties and the testimony of the witnesses. The testimony introduced and the arguments of

counsel, all of which are set out in the record, made clear the meaning of the term, so that a technical definition was unnecessary. Wishart v. United States, 8 Cir., 29 F.2d 103, 105; Shreve v. United States, 9 Cir., 103 F.2d 796, 812, certiorari denied 308 U.S. 570, 60 S.Ct. 84, 84 L.Ed. 479. No prejudice is shown here resulting from the absence of a definition of the term "net worth." See 3 Am.Jur., 639. There was no issue as to the meaning of the term "net worth", and no prejudice is shown for failure to define the term. See Deacon v. United States, 1 Cir., 124 F.2d 352.

Since the submission of this case to the court on reargument as above set out on March 9, 1955, the appellant has called the attention of the court to two cases involving the question of tax evasion from other circuits.

On April 11, 1955, the United States Court of Appeals for the Ninth Circuit filed its opinion in the case of Bloch v. United States, 221 F.2d 786, in which it reversed and remanded the case for a new trial on the sole ground that the trial court's instruction on willfulness was erroneous. In this connection it is interesting to note that appellant made no objection to the instruction as given, but only objected to the failure of the court to give his requested instruction. However, the Ninth Circuit followed Rule 52(b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., and applied by the Supreme Court in United States v. Atkinson, 297 U.S. 157, 56 S.Ct. 391, 392, 80 L.Ed. 555, as follows:

"In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings."

The trial court's charge there on the subject of willfulness which the appellate court found to be erroneous is as follows:

" * * * It [willfulness] includes several states of mind, any one of which may be the willfulness to make up the crime.

"Willfulness includes doing an act with a bad purpose. It includes doing an act without a justifiable excuse. It includes doing an act without ground for believing that the act is lawful. It also includes doing an act with a careless disregard for whether or not one has the right so to act."

It may be noted that the court stated that the trial court's instruction on presumption, which is similar to that given by the trial court here, was erroneous, but the court reversed on the count covering the subject of willfulness.

While appellant apparently feels that the error in the trial court's instructions in the Bloch case place the case here on all fours with that case, he fails to consider, in spite of the similarity of the instruction as to presumption in both cases, the plain and clear instructions submitted to the jury by the trial court here as to the question of intent, so here the instructions of the trial court taken as a whole place the case completely outside of the error the appellate court found in the Bloch case. On the subject of intent the trial court in this case stated:

"The element of intent enters into the offenses charged in the indictment and is one of the questions for you to consider and decide. That is, whether the defendant willfully and knowingly attempted to defeat and evade a portion of his income tax due and owing by him to the United States of America for the calendar years 1945, 1946 and 1947."

Appellant also overlooks two other cases from the Ninth Circuit, in both of which the appeals were based on alleged erroneous instructions.

In one of them, Bateman v. United States, 9 Cir., 212 F.2d 61, decided on April 15, 1954, before the Supreme Court had ruled on the Holland and

companion cases, 348 U.S., the court said, 212 F.2d at page 70:

"As often occurs counsel has singled out one instruction in claiming error without regard to the instructions considered as a whole. The instructions on intent, given by the Court, correctly stated the law, were plain and understandable and left no room for doubt in the minds of the jurors. * * *

"It is apparent that the jury was fully instructed that if appellants acted in good faith they should be acquitted."

So here, the trial court instructed the jury: " * * * if you are not satisfied of the defendant's guilt beyond a reasonable doubt, you should find him not guilty." And certainly, the trial court's instructions on intent "correctly stated the law, were plain and understandable, and left no room for doubt in the minds of the jurors."

The second case from the Ninth Circuit to which we refer is that of Legatos v. United States, 222 F.2d 678. This decision was entered after the decision in the Bloch case, supra, and in that opinion the court refers to both the Bateman and Bloch cases as follows:

"It is our conclusion that, considered as a whole the Court's instructions on intent and wilfulness clearly and correctly stated the law and were not such as to mislead the jury. We conclude, therefore, that the present case is governed by Bateman v. United States, supra, and is distinguishable from Wardlaw v. United States, supra [5 Cir., 203 F.2d 884], and Bloch v. United States, supra, where the effect of the court's instructions considered as a whole was not discussed."

A careful review of these three opinions of the Ninth Circuit convinces us that the case here has more similarity to the Legatos and Bateman cases than to the Bloch case. And the statement in the Legatos case, supra, "that, considered as a whole the Court's instructions on intent and wilfulness clearly and correctly stated the law and were not such as to mislead the jury", applies here.

The case of Steele v. United States, 222 F.2d 628, was decided by the Court of Appeals for the Fifth Circuit on May 13, 1955, and the court reversed the decision of the trial court, stating that the most prejudicial of the errors dealt with two government exhibits, one of which purported to be a computation of Steele's income on a net worth basis, and the other exhibit a computation of such income on the expenditures—available funds basis. The court upheld appellant's contention that there were omissions, interpretations and discrepancies between the record and the exhibits and a considerable portion of the testimony of some of the witnesses. Here the exhibits conformed to the evidence submitted by the government.

In the Steele case after the jury had retired the United States Attorney requested that the exhibits be sent to the jury room, which was done over the objections of appellant. Nothing in the record here indicates what happened to exhibits 33, 70 and 71 after the jury retired. The decision in the Steele case is not applicable here. The trial court here exercised great care and caution in reference to the testimony of the government witness who prepared the exhibits and in receiving the exhibits themselves, and in his instructions to the jury that intent to defeat and evade is an essential to the crime charged he guarded against the possibility that the jury would assume that the figures in the exhibits once established confirmed the guilt of appellant.

Since the resubmission of this case on March 9, 1955, we have reviewed the original record and briefs, the petition for rehearing, the records and briefs submitted at the time of the reargument, and the cases called to our attention since then by the able counsel on both sides. We are still convinced that appellant had a fair trial and that there is no reversible error. Accordingly the judgment of the trial court is

Affirmed.