John P. **KAMPMEYER**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 15276.

United States Court of Appeals
Eighth Circuit.

Nov. 22, 1955.

Rehearing Denied Dec. 19, 1955.

314

Louis E. Lipp, Omaha, Neb. (Bernard J. Boyle, Boyle & Hetzner, Fred S. White, White, Lipp & Simon, Omaha, Neb., and Charles W. Bowers, Des Moines, Iowa, were with him on the brief), for appellant.

Roy L. Stephenson, U. S. Atty., Des Moines, Iowa (H. Brian Holland, Asst. Atty. Gen., John H. Mitchell, Joseph M. Howard and Dumond P. Hill, Sp. Assts. to the Atty. Gen., and John C. Stevens and Robert J. Spayde, Asst. U. S. Attys., Des Moines, Iowa, were with him on the brief), for appellee.

Before STONE, WOODROUGH and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

Appellant herein was found guilty in two counts of an indictment charging him with wilful attempts to defeat and evade a large part of his income taxes for the years 1947 and 1948 in violation of Section 145(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. Specifically, the government charged that for the year 1947 the appellant filed a

false and fraudulent return showing his net income at $13,314.09 and the amount of tax due and owing thereon to be $3,358.31, whereas, the government alleged that for the said year 1947 the appellant's net income was $51,786.40, upon which he owed a tax of $26,039.31. With reference to the year 1948, it was alleged that the appellant filed a false and fraudulent return showing a net income of $22,485.80 with a tax due in the amount of $5,036.36, whereas his net income for said year totalled $53,178.12, upon which he owed a tax of $18,047.00.

Upon being found guilty by a jury, the appellant was sentenced to imprisonment for two consecutive terms of three years and fined $7,000.00 on each count.

The appellant was the operator of a billiard parlor and a bowling alley but derived additional income from a drive-in theater, a horse racing stable and from gambling. In connection with the billiard parlor, he operated two separate types of lottery, one called "Baseball" and the other "Tip Tickets".

The government attempted to establish its case by the net worth method, and in conjunction therewith offered and there was received in evidence what is designated as Exhibit No. 14. Exhibit No. 14 is a summary of the government agents' findings based upon the testimony and other evidence in the case. The exhibit sets forth in detail the appellant's liabilities and assets beginning with December 31, 1939. It shows the net worth as of that date to be $53,577.19. Yearly thereafter, through December 31, 1948, there appears the appellant's net worth arrived at through computing the assets and liabilities of each year. The net worth as of December 31, 1946, immediately preceding the indictment period, was $197,443.29; on December 31, 1947, it was $223,576.54; and on December 31, 1948, it was $273,146.61, an increase during the two indictment years of $75,703.32.

The exhibit also shows appellant's estimated net income for each one of such years and it includes the net income as reported by the appellant in his income tax returns and the additional income upon which the government claims the appellant paid no tax during all of those years, with the exception of the year ending December 31, 1946, in which the government agents found that the appellant overstated his income by the sum of $275.43.

The appellant did not testify in his own behalf but his position with reference to the government's charge becomes apparent through affidavits given to the government agents during the investigation and his oral statements in reply to the agents' questions. As in all cases, where the taxpayer's books are inadequate and incomplete and an attempt to establish failure to pay the proper tax is based upon use of the increase in net worth method, discrepancies and differences appear. That the appellant's books were inadequate and incomplete appears clear from the appellant's statements to the effect that with reference to his gambling income he did not keep records for fear local authorities might procure them and he admits that his reported income might have been understated by "about forty thousand dollars during the period 1940 to 1950 inclusive; that most, if not all of this understatement would have occurred during the war years, 1942, 1943, 1944 and 1945;". It is also apparent that with respect to the income from lotteries, such as Baseball and Tip Tickets, only the net was reported in the books, and consequently there was no possibility of the government agents checking gross income therefrom or doing an accurate job of accounting.

The main point in controversy, however, revolves around the claim of the appellant that on or about December 31, 1939, he had in his possession in various safes and on his person $90,000.00 in currency which he claims to have accumulated between the years 1907 and 1939. In ascertaining the basis for Exhibit 14, the agents disregarded this claim. They based this refusal on their examination of appellant's income tax returns for years prior to the years under

inspection, by the introduction into evidence of financial statements given by the appellant on June 4, 1940, in connection with an application for a loan, and on August 1, 1946, given for the same purpose, together with a transcript of his testimony in a divorce proceedings between appellant and his first wife in 1932, in which he claimed that he was operating his business at a loss and was extremely hard up for money.

■ It must be conceded that if the appellant's claim that he had $90,000.-00 in currency on December 31, 1939, was correct, then the government's case must fall, as such an accumulation of currency could at least to a large extent explain what otherwise might appear as income during subsequent years. It is apparent that the jury disbelieved his claim with reference to the accumulation of such a large amount of currency and such disbelief or finding is amply supported in the record.

Appellant's first ground for appeal is:

"The trial Court erred in admitting and not withdrawing the Revenue Agents' net worth summary, Exhibit 14."

Appellant quotes from Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, and companion cases, with reference to the guideposts the Supreme Court has set up for use of the trial courts and the appellate courts where the government has used the increase in net worth method of attempting to prove its case. He criticizes what he terms the government's failure "on the very threshold of its responsibility by avoiding the essential inquiry as to the taxpayer's currency position at the start of the prosecution years (as finally selected by the Agents) or for that matter, at the start of any year closer thereto than seven years earlier". We think appellant's criticism is unjustified.

According to the testimony, the agents' first step was to verify, if possible, the existence of the claimed $90,-000.00 in currency as of January 1, 1940. The agents testified that they examined

bank records and balances, business transaction records in the taxpayer's books, loan accounts at banks and public records as well as court records. The indication is that the agents did everything they could to verify the existence of the claimed $90,000.00. They found no justification for such claim and accordingly did not consider it in computing the appellant's net worth at the beginning of the period examined.

■ The appellant's signed financial or credit statements, his testimony in the divorce proceedings in 1932, his obtaining money in subsequent years from his wife's postal and savings accounts, the liquidation of stock and a life insurance policy are strange actions for one who had in his possession this large amount of cash. It was claimed by appellant that he had approximately $50,000.00 in cash which he gave to his father for safekeeping in about 1932, yet at the same time he testified in his divorce proceedings to the effect that he was operating at a loss and he subsequently asked the court having jurisdiction of the divorce proceedings to set aside an alimony decree for the support of his wife and minor child in the amount of $40.00 per month because of economic conditions necessitating his borrowing money. This was competent evidence to justify the agents' refusal to include the alleged $90,000.00 in their summary.

The claim here is that the agents failed to make "essential inquiry as to the taxpayer's current position at the start of the prosecution years". An examination of Kampmeyer's affidavit of January 23, 1952, which was gone over by Kampmeyer and his counsel before it was executed, indicates that the main concern of the taxpayer was with reference to getting credit for the $90,000.-00 as of January 1, 1940. Nowhere therein does he suggest the subsequent accumulation of an additional sum in cash to make up for the unreported income in the prosecution years of 1947 and 1948. Appellant's counsel criticize failure of the government agents to follow "leads" given to them by the appel-

lant and cite Holland v. United States, supra. That case refers to the necessity of the government agents following "relevant leads". Vague gambling earnings, oral claims to large bills in safes and deposit boxes, the changing of large bills to smaller ones are hardly in the category of "relevant leads" as referred to by the Supreme Court in the Holland case. They are not "leads reasonably susceptible of being checked, which, if true, would establish the taxpayer's innocence". The government agents could hardly be expected in 1952 to check the veracity of empty assertions of the appellant that in years prior thereto he had had huge amounts of cash or currency stacked away in safes or deposit boxes in banks. With reference to the burden of proof remaining on the part of the government, the Supreme Court in the Holland case said at page 138 of 348 U.S., at page 137 of 75 S.Ct.:

"But where relevant leads are not forthcoming, the Government is not required to negate every possible source of nontaxable income, a matter peculiarly within the knowledge of the defendant. See Rossi v. United States, 289 U.S. 89, 91–92, 53 S.Ct. 532, 533, 77 L.Ed. 1051.

"Nor does this rule shift the burden of proof. The Government must still prove every element of the offense beyond a reasonable doubt though not to a mathematical certainty. The settled standards of the criminal law are applicable to net worth cases just as to prosecutions for other crimes. *Once the Government has established its case, the defendant remains quiet at his peril.* Cf. Yee Hem v. United States, 268 U.S. 178, 185, 45 S.Ct. 470, 472, 69 L.Ed. 904. The practical disadvantages to the taxpayer are lessened by the pressures on the Government to check and negate relevant leads." (Emphasis supplied.)

█ If the government agents did not ask the appellant the specific question as to how much currency he had in his safe or cash in the bank box on December 31, 1946, then it must be asserted on behalf of the government that neither did the appellant make any reference thereto in his detailed affidavit which was gone over and corrected by him and his counsel. He remained quiet at his peril. The lack, if there be one, went to the weight of the evidence, not to its admissibility. We think the government agents exhausted all material and relevant leads furnished them and find no justification for criticism. The most that can be said for appellant's objection is that he did not agree with the summary or its conclusions.

This court has frequently sanctioned the use of summaries in income tax evasion cases. See Heasley v. United States, 8 Cir., 218 F.2d 86, 89–90; Banks v. United States, 8 Cir., 204 F.2d 666, 670–671, remanded 348 U.S. 905, 75 S.Ct. 311, reaffirmed, 8 Cir., 223 F.2d 884; Hanson v. United States, 8 Cir., 186 F.2d 61, 67; Leeby v. United States, 8 Cir., 192 F.2d 331. Furthermore, in dealing with the government's computations under somewhat similar circumstances, the Court of Appeals for the 6th Circuit, in Gariepy v. United States, 189 F.2d 459, 462, said:

"The transactions upon which this computation was made are all sustained by evidence. They were not successfully controverted. It is true that appellant's counsel made vigorous attacks upon the accuracy of the computation. *At best it was, of course, but an estimate, but as an estimate it was entitled to the consideration of the jury because based on substantially the entire evidence in the record.* United States v. Johnson, 319 U.S. 503, 519, 63 S.Ct. 1233, 87 L.Ed. 1546; Bell v. United States, 4 Cir., 185 F.2d 302. The principal attack of the appellant upon the evidence which sustains this computation is two-fold. The first is the challenge to the accuracy of the appellant's net worth, or lack of it, at the base period, and secondly is the contention that each item

318

of evidence must be so fully and accurately established that it permits no reasonable doubt as to the fact upon which reliance is placed. As to the first contention, all of the evidence, and that includes testimony of reluctant witnesses permitted to be cross-examined as hostile, points with great persuasiveness, if not indeed conclusively, that when the appellant began his professional practice in 1937 he was without assets and heavily in debt. As to the second, the appellant appears to confuse the function of the court with that of the jury. In United States v. Valenti, 2 Cir., 134 F.2d 362, 364, certiorari denied 319 U.S. 761, 63 S.Ct. 1317, 87 L.Ed. 1712, Judge Clark made a careful study of the applicable rule, and we accept fully his conclusions. 'The requirement of proof beyond a reasonable doubt is a direction to the jury, not a rule of evidence; it operates on the whole case, and not on separate bits of evidence each of which need not be so proven; and it cannot be accorded a quantitative value other than as a general cautionary admonition (citing cases). It is the court's function to decide whether evidence is competent to justify certain inferences; it is not the court's function to decide which of various inferences should be drawn.'" (Emphasis supplied.)

Exhibit 14, which the appellant questions, was supplemented by what has been referred to as Exhibit 14A. Exhibit 14A is a stipulation entered into between the government and the appellant. It provided as follows:

"It is stipulated and agreed by and between the plaintiff and defendant that Exhibit '14' except items 2 & 26 contains a list of defendant's assets, liabilities and living expenses for the years 1939 to 1948, inclusive, and to the extent only that said items are contained in said Exhibit, the same are correct.

"It is understood by the parties that defendant claims that there are other assets and liabilities that are not listed in said Exhibit and reserves the right to offer evidence of such other assets and liabilities.

"It is also understood by the parties that defendant does not agree that the summary of gross income, net income and additional income is a correct summary of said items.

"The defendant waives identification of the Exhibits relating to the items contained in Exhibit '14', and consents to the use of secondary evidence of the contents of the books and records referred to in said Exhibit.

"This Stipulation shall not operate as a limitation upon the right of either party to introduce other evidence upon the matters contained in said Exhibit '14', and defendant reserves the right to object to the admissibility of said Exhibit '14' except as to the identification & secondary character of the items therein. This Stipulation shall be binding on the parties hereto only in this proceeding.

"Signed at Des Moines, Iowa, this 17 day of June, 1954."

Of the two exceptions referred to above, Item 2 covers "cash in banks" which, of course, was disputed by appellant, and Item 26 referring to the value of certain real estate estimated by the government agents at $10,000.00 for each of the years 1947 and 1948. As was stated in the Gariepy case, supra, the government's computation was at best but an estimate. It was, however, entitled to the consideration of the jury. We believe there was ample basis for the introduction of the summary and that the weight to be given it was for the jury.

Appellant's second point is:

"The Trial Court erred in admitting and not withdrawing appellant's income tax returns for 1940

to 1946 and record of year-end bank balances for 1939 to 1946."

This court has approved in a number of cases the use of income tax returns covering years prior to the indictment years. In Mitchell v. United States, 8 Cir., 208 F.2d 854, 857, remanded 348 U.S. 905, 75 S.Ct. 311, reaffirmed 8 Cir., 221 F.2d 554, this court said:

"Over Defendant's objection the government was permitted to introduce in evidence income tax returns made by Defendant covering years prior to the years here involved and also to introduce proof that Defendant made no income tax returns during certain prior years. We think the evidence was admissible. Leeby v. United States, supra; Hanson v. United States, 8 Cir., 186 F.2d 61; Schuermann v. United States, 8 Cir., 174 F.2d 397. A like contention was urged in Leeby v. United States, supra, and in the course of that opinion it is said, inter alia, 'In estimating defendant's income on the receipts and disbursements basis, or on the net worth basis, the witness considered the question of his income or want of income prior to 1944 and we think the testimony was admissible for that purpose and the court carefully limited it to that purpose.' "

In connection with the receipt in evidence of the 1940–1946 returns, the trial court herein instructed the jury as follows (Instruction No. 14):

"The witness, Mr. Sklenicka, was permitted and used the returns for earlier years as showing the reported income of the defendant in connection with the net worth theory. It was appropriate for him and is appropriate for you to use and consider those returns for such purpose and in your determination of defendant's net worth for the years 1947 and 1948 as bearing upon the amount of income tax defendant should have paid in 1947 and 1948; and in your reference to such prior returns to aid in that determination,

you may view such prior returns for such bearing and weight as you believe they should have on the question of defendant's intent *or lack of intent* to evade payment as to the taxes due for 1947 and 1948." (Emphasis supplied.)

We hold that the tax returns for the years subsequent to the starting point of the computation with reference to net worth were entirely competent and no error was committed in their receipt.

Appellant also objects to the use by the government agents of year-end bank balances. Such yearly bank balances were utilized by the government agents in the preparation of Plaintiff's Exhibit 14, being reflected there as Item No. 2. There was introduced into evidence Exhibit 46 which was "a break down of the amounts entered in item 2 of Exhibit 14". The objection to Exhibit 46 during the trial was as follows:

"Mr. Bowers: The defendant objects to all of that portion of Exhibit 46 relating to the years 1939 and 1946, inclusive, as being transactions other than those alleged in the indictment and for years prior to 1947 and 1948, and therefore irrelevant, immaterial and incompetent."

The court admitted the exhibit,

" * * * for all purposes for such assistance that it will be to the jury as a breakdown of the summary that is already in evidence for that particular item, and for the reason that it was gone into on cross-examination."

We think there was no error in the admission. In the preparation of a net worth summary, it seems to us proper that the yearly bank balances be shown. In Exhibit 14A, supra, the appellant questioned Item 2 and "reserves the right to offer evidence of such other assets and liabilities". He failed to do so. Under the circumstances, we believe it was entirely proper for the figures regarding year-end bank balances to go

before the jury for such weight as the finders of the facts believed them to be entitled.

Appellant relies upon Vloutis v. United States, 5 Cir., 1955, 219 F.2d 782, 788. That case is not support for appellant's contention under the factual situation confronting the court in this case. Therein, the appellant had objected to,

"* * * evidence concerning his bank deposits, withdrawals and year-end balances for certain periods during the prosecution years and prior thereto."

The court stated, at page 788:

"We find nothing improper in the admission of such evidence where it clearly relates to and forms a part of the factual ingredients of the Government's case and has probative value; indeed, the proper revelation of appellant's financial history and the computation of his worth required that all financial transactions be checked, including banking transactions. However, some of the Government's evidence had no relation to this permissible inquiry."

Thereafter, the court refers to year-end balances going back many years and states:

"* * * it is our opinion that the year-end balance of a bank account, *standing alone*, is a fact which has absolutely no necessary connection with the amount of money available, or even deposited during the year. When the Government used only that figure for the years prior to the prosecution period and *when the balances for the consecutive years were announced at length in rapid succession, it forcefully presented to the jury meaningless evidence with the expressed purpose of impressing the jurors with the belief there was relatively little money available for accumulation*. Such evidence was not admissible in that form and was clearly prejudicial to appellant." (Emphasis supplied.)

That is not the situation in the instant case. The bank balances referred to covered only the particular years under investigation beginning with 1939. They were part and parcel of the government's net worth computations as contained in Exhibit 14, "the factual ingredients of the Government's case". The admission of the yearly bank balances as a breakdown of part of Exhibit 14, which included a statement of appellant's other assets and his liabilities, was entirely proper.

Appellant's third point is:

"The Trial Court erred in admitting and not withdrawing records of tax assessments, tax returns, documents and other exhibits dealing with transactions prior to 1940."

Appellant had claimed to have accumulated $90,000.00 in currency between 1907 and 1940 and that he had gradually invested a large part of such cash accumulation during "1942 and in succeeding years". Appellant's statements to the agents were inconsistent. Originally he claimed to have had no more than $20,000.00 or $30,000.00 at any time or possibly $50,000.00 in cash in 1940. Subsequently he claimed the amount was $90,000.00. It was necessary, under Holland v. United States, supra, that the government agents check the "leads" given to them, which investigation might prove the truth or falsity of the taxpayer's assertion regarding the accumulation of undisclosed funds. Certainly, an examination of the record during the period in which the appellant claimed he accumulated the cash was indicated and entirely proper. No error was committed in admitting the records.

Appellant's fourth point is:

"The Trial Court erred in denying appellant's motion for acquittal."

What we have already said justifies little further comment on this score. The agents' summary, Exhibit 14, disregarded appellant's statement with reference to the accumulation of a large amount of cash on December 31, 1939. The evidence was sufficient to

justify such discounting or disbelief. There was, however, a question of fact for the triers thereof as to the accuracy of the government's computations and certainly the question of intent was also one for the jury. Appellant's motion for acquittal was properly denied.

Appellant's fifth point for appeal is:

"The Trial Court erred in giving certain instructions and in failing to give other instructions."

Appellant's main complaint is that, "The Court's instruction No. 13, not only does not meet the standard of lucidity and completeness in acquainting the jury with the nature of the net worth method and does not set out 'the assumptions on which it rests and the inferences available both for and against the accused,' it is, in truth, a misstatement of its scope and significance."

The record indicates that the court prepared written instructions, giving copies to counsel. Thereafter, and before the charge was read to the jury, counsel on each side were given an opportunity to take their exceptions.

Appellant's first exception to Instruction No. 13 had to do with the addition of the words "gifts and inheritances", following the word "income". The court adopted the appellant's suggestion. Appellant's next objection or exception thereto was as follows:

"Mr. Bowers: Defendant further excepts to Instruction Number 13 in that on the second page of said instruction in the paragraph commencing 'there are in evidence here certain affidavits of the defendant, in one of which he claims to have had $90,000 in currency on or about January 1st, 1940, following the completed purchase of a farm in Hinton, Iowa.' The defendant believes that in regards to said $90,000 that the date was indefinite, and that it was after January 1st, 1940, and that there was testimony that in 1940 also he had some $50,000, so there is testimony relating to an item of

$50,000, and there was also testimony later in the year as to an item of $90,000.

"The Court: I interpreted it to include both."

We find no error in connection with the court's action on appellant's second exception to Instruction No. 13.

The next exception to Instruction No. 13 is most strenuously relied upon by the appellant in this appeal. It is as follows:

"Mr. Bowers: Yes. Now, we further object to that instruction for the reason that it confines the findings of the jury to this sum of $90,-000 and it confines the right of the jury to challenge the accuracy of Exhibit 14 solely by the exclusion of this sum of $90,000, and we think that there should be inserted in there in that paragraph—that in the succeeding paragraph I find this phrase: 'If you find from all of the evidence in this case that defendant had $90,000 in currency on hand as above on January 1, 1940, then Exhibit 14 is inaccurate in that it would not have taken into account all of defendant's assets.' We think there should be added after the word '$90,000' or any other sum of money in safety deposit boxes or safes."

That portion of the charge to which exception is taken has reference to the appellant's financial situation as of January 1, 1940. Appellant's suggestion for healing what he claimed was an error was that the words "or any other sum of money in safety deposit boxes or safes" be added thereto. There was no evidence in the record with reference to any sum possessed by the appellant on or about January 1, 1940, with the exception of the claimed $90,000.00 in currency. Appellant's own affidavit sworn to as of January 23, 1952, states in part as follows:

"That on or about January 1st, 1940, after I bought and paid for my farm near Hinton, Iowa, I owned and possessed about ninety thousand dollars of cash money; that

this amount of money consisted wholly of currency which I then had on hand and in my possession; * * * ". (In a subsequent affidavit dated February 8, 1952, defendant corrected this, insofar as the date January 1, 1940, is concerned by including the words "or 1941".)

The trial court's refusal to amend the charge in accordance with the suggestion of appellant's counsel by including "or any other sum of money in safety deposit boxes or safes" was entirely justified. The particular instruction attacked had reference to the situation as of January 1, 1940. True enough, the record contains vague references to the period subsequent to January 1, 1940, as to large bills in safes, changing large bills to small, gambling winnings of approximately $40,000.00, and purchases of two· notes in January, 1947, from unknown funds. These, however, all had to do with the situation subsequent to January 1, 1940. No specific reference thereto was called to the trial court's attention and no proper exception was taken thereon. The inclusion of the words suggested, "or any other sum of money in safety deposit boxes or safes", would have been meaningless insofar as January 1, 1940, was concerned. There was no such evidence. Appellant's after-thoughts of criticism, not called to the attention of the trial judge, and raised here for the first time, may not be considered by this court unless we find that the instructions were so completely erroneous as to result in a miscarriage of justice. Mitchell v. United States, supra. We do not so find.

Appellant took exception to what was designated as Instruction No. 14, supra. Appellant's exception to Instruction No. 14 was as follows:

"Mr. Bowers: Defendant further excepts to Instruction Number 14, particularly the latter part of said instruction referring to the—refers to the bearing of prior returns on the question of intent. We think that there should be added to that instruction before the jury can use the prior returns—the returns for the years prior to 1947 and '48 as bearing on the question of intent they must first find that the returns filed for those years were false and fraudulent and filed wilfully with intent to defraud the government."

We do not think failure to so instruct was fatal to the charge. In Instruction No. 14 the jurors were told that they might consider those returns in determining the appellant's net worth for the years 1947 and 1948. That purpose was proper. The exhibits were then before the jury. They were also told that they could "view such prior returns for such bearing and weight as you believe they should have on the question of defendant's intent *or lack of intent* to evade payment as to the taxes due in 1947 and 1948". (Emphasis supplied.) In other words, if the jurors found in the prior returns no wilful attempt to evade payment of tax, it would have a bearing upon his lack of fraudulent intent in filing his returns in 1947 and 1948, and would operate to negate the government's charge as to such years. If they found that in the prior returns he did wilfully and fraudulently attempt to evade payment of tax, they could use that as bearing upon the question of his intent in filing his 1947 and 1948 returns. Appellant cites Hartman v. United States, 8 Cir., 1954, 215 F.2d 386, 393. That case is not support for appellant's contention. Therein, this court said at page 393:

"In order for wrongful acts not included in a charge to be admissible to prove intent *they must be of such a character that as a matter of logic they tend to demonstrate a criminal intent in the acts within the charge.* Wolcher v. United States, 9 Cir., 200 F.2d 493." (Emphasis supplied.)

As we have demonstrated, the prior returns were admissible insofar as they might have a bearing on the establishment of net worth. They did, then, have some connection with the charges in the instant case. Furthermore, the appel-

lant, in his affidavit, admits that the prior returns were incorrect in that they understated his income by "about forty thousand dollars during the period 1940 to 1950 inclusive; that most, if not all of this understatement would have occurred during the war years, 1942, 1943, 1944 and 1945". The appellant's own statement makes the returns admissible on the question of intent and we believe the trial court properly instructed the jury with reference thereto. We find no error therein.

■ In appellant's brief, he calls attention to the court's failure to give Defendant's Instruction No. 7, which reads as follows:

"If you find that there was unreported income of the Defendant, but that this income was earned prior to 1948, you will find for the Defendant on Count 2.

"If you find that there was unreported income of the Defendant, but that this income was earned prior to 1947, you will find for the Defendant on Count 1."

The court did not give requested Instruction No. 7, stating that it was adequately covered by other instructions. We believe the court was correct. Continuously through the instruction he cautioned the jurors that the charges against the appellant of knowingly and wilfully attempting to defeat and evade his income tax were confined to the years 1947 and 1948, "It is those years that are involved in the indictment."

We have examined the court's entire charge in detail. In our opinion, the jury was not misled nor was there any resultant misunderstanding or confusion. The instructions covered the increase in net worth theory and properly limited the use of evidence covering years prior to the indictment periods. Plaintiff's Exhibit 14 covered the period from December 31, 1939 to December 31, 1948. Plaintiff's Exhibit 14A, supra, stipulated that with the exception of Items 2 and 26 Exhibit 14 was correct as far as it went. In other words, all figures contained therein, with the exception of the conclusions, of course, were accurate, but the appellant claimed that there were other assets and liabilities and reserved the right to offer evidence on such other assets and liabilities. This he failed to do. The appellant "remained quiet at his peril". The main and overriding objection to Exhibit 14 was that it did not include appellant's claimed accumulation of $90,000.00 in currency as of December 31, 1939. We think the jurors so understood from the evidence, from Exhibit 14 and from the court's instructions. They were specifically told that the appellant was charged with a violation of the income tax laws for the years of 1947 and 1948 only. We do not think this was in any way confusing to the jury or misleading. We find no error in the court's instructions.

Appellant's last point is:

"The Trial Court erred in permitting the U. S. Attorney to make improper comment in his summation to the jury."

■ At the opening of the trial, the United States Attorney requested that the court order all witnesses excluded from the courtroom during the trial with the exception of an Internal Revenue Special Agent. After discussion, it was agreed that the appellant might retain two accountants at his counsel table. One of such accountants was called as a witness for the government, but neither testified for the defense. In his argument to the jury, the United States Attorney directed attention to the fact that the appellant had accountants present in the court room and that not one of them took the witness stand to verify any of the facts and circumstances in appellant's records. Exception was taken and the trial court overruled. It was claimed by the government that the appellant's records were inaccurate and incomplete. The appellant had received permission to keep his two accountants in the court room and at counsel table during the trial of the case. We think it was not unreasonable for the trial court to allow the United States Attorney to direct the jurors' attention

to that fact, which was, of course, perfectly obvious. See United States v. Beekman, 2 Cir., 155 F.2d 580, 584; Wigmore, Evidence, § 288. Considering all the circumstances in the trial, it was a discretionary matter and no error was committed.

Viewing the case in its entirety, we are of the opinion that the appellant had a fair trial and accordingly the case is affirmed.